517 A.2d 572.

Berks County Board of Assessment and Revision of Taxes and Oley Valley School District, Appellants *v.* Berks County Conservancy, Appellee.

Berks County Conservancy, Appellant *v.* Berks County Board of Assessment and Revision of Taxes and Oley Valley School District, Appellee.

Argued September 12, 1986, before Judges MAC-PHAIL and PALLADINO, and Senior Judge BLATT, sitting as a panel of three.

*Gerald P. Sigal,* with him, *Donald F. Spang, Merkel & Spang,* for appellants/appellees, Berks County Board of Assessment and Revision of Taxes and Oley Valley School District.

*Richard E. Fehling,* with him, *Sidney D. Kline, Jr., Stevens & Lee,* and *Paul H. Edelman* and *William W. Runyeon, Edelman, Parish, Orlando & Runyeon,* for appellee/appellant, The Berks County Conservancy.

OPINION BY JUDGE MACPHAIL, November 10, 1986:
The Berks County Board of Assessment and Revision of Taxes (Board) and the Oley Valley School District

(jointly, Appellants) have brought an appeal, docketed at No. 3013 C.D. 1985, from an order of the Court of Common Pleas of Berks County which granted real estate tax exemptions to certain tracts of land owned by the Berks County Conservancy. The Conservancy has filed a cross-appeal, docketed at No. 3334 C.D. 1985, challenging the common pleas court's ruling that a failure to grant tax exempt status to the subject properties would not violate the Uniformity Clause of the Pennsylvania Constitution, Pa. Const. art. VIII, §1. For the reasons which follow, we reverse the grant of tax exempt status and affirm the ruling that no violation of the Uniformity Clause has been established.

At issue in the instant appeal are six tracts of land located in Alsace Township, Berks County which were received by the Conservancy as gifts in six consecutive years from 1976 through 1981.[1] Exemption petitions regarding these properties were filed with the Board at various times between August, 1979 and January, 1982. The Board's denials of tax exempt status were appealed to the common pleas court where a consolidated *de novo* trial was conducted. The common pleas court subsequently filed a detailed adjudication concluding, *inter alia*, that the Conservancy is a purely public charity and that the subject properties are used for purely public charitable purposes.

Appellants' first contention before this Court relates to the exemption petitions originally filed with the Board. Appellants contend that those petitions were untimely filed with the Board under Section 8(c) of the Act

---

[1] The common pleas court order also granted tax exempt status to another property owned by the Conservancy in Perry Township. Appellants have failed to present any argument regarding this seventh property. Our decision, accordingly, will not address the propriety of the tax exempt status granted to the Perry Township property.

of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. §5349(c) which provides that annual assessment appeals shall be filed on or before the first day of September. We have previously held that this appeal deadline is mandatory. *Wheeling-Pittsburgh Steel Corp. v. Board of Assessment Appeals, Westmoreland County,* 25 Pa. Commonwealth Ct. 194, 360 A.2d 265 (1976). We have also recognized, however, that appeals filed *after* the September 1 deadline may be considered timely as to the following tax year. *Id.; see also ASR Realty Corp. v. Revenue Appeals Board, Northampton County,* 90 Pa. Commonwealth Ct. 122, 494 A.2d 497 (1985); *City of Pittsburgh v. County of Allegheny,* 49 Pa. Commonwealth Ct. 442, 412 A.2d 655 (1980). In fact, the trial judge acted in accord with this case law when, by supplemental order, he directed that the effective date of the tax exemptions granted "shall be the year following the year in which the applicable petitions for said exemptions were filed." We, accordingly, find no procedural error or jurisdictional defect in the proceedings below.

The remaining issues raised by Appellants relate to the merits of the trial court's decision. We note preliminarily that statutory provisions which exempt property from taxation are to be strictly construed. *Greater Erie Economic Development Corp. Appeal,* 61 Pa. Commonwealth Ct. 144, 433 A.2d 568 (1981). Moreover, the taxpayer bears the burden of establishing its entitlement to exempt status. *Council Rock School District v. G.D.L. Plaza Corp.,* 91 Pa. Commonwealth Ct. 176, 496 A.2d 1298 (1985). Our scope of review is to determine whether the trial court's adjudication evidences a lack of supporting evidence or an abuse of discretion. *Id.*

The Conservancy is a Pennsylvania non-profit corporation with the following stated purpose:

To engage in such charitable, scientific and educational activities as are within the meaning of Section 501(c)(3) of the Internal Revenue Code, as amended, including but not limited to those scientific and educational activities which are deemed most appropriate to the conservation and preservation of land, forests and waters with scenic, biologic, geologic, ecological, scientific, historic or recreational interest or significance.

R.R. at 365a. The Conservancy leases the subject properties to the Baird Ornithological Club (Baird) for a nominal fee. R.R. at 347.1a-5a. The lease agreement stipulates that the premises are to be used as a public recreational area. Baird, also a non-profit corporation, describes its purpose as follows:

To study birds and nature and through that study acquaint others with birds and the evironment; and to help preserve wildlife and promote conservation and retention of natural areas.

R.R. at 341a.

The trial court based its ruling that the subject properties are entitled to tax exempt status on Section 204(a)(3), (6), (9) of The General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-204(a)(3), (6), (9) which provides that:

The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

. . . .

(3) All . . . institutions of learning, benevolence, or charity . . . with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same

by applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose;

. . . .

(6) All public parks when owned and held by trustees for the benefit of the public, and used for amusements, recreation, sports and other public purposes without profit;

. . . .

(9) All real property owned by one or more institutions of purely public charity, used and occupied partly by such owner or owners and partly by other institutions of purely public charity, and necessary for the occupancy and enjoyment of such institutions so using it. . . .

The constitutional foundation for Section 204 of the Law is Article VIII, Section 2(a)(v) of the Pennsylvania Constitution which provides that:

The General Assembly may by law exempt from taxation:

. . . .

(v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.

Pa. Const. art. VIII, §2(a)(v). Thus, in order for real property to be declared tax exempt it must be both owned by an institution of "purely public charity" and "actually and regularly used" for the charitable purposes of that institution. In the instant case, we need not address the issue of whether the Conservancy and/or Baird constitute "purely public charities" since we conclude that the subject properties do not satisfy the

requirements for use and occupancy set forth in Section 204 of the Law, 72 P.S. §5020-204.

First, the record reflects that portions of the subject properties were farmed commercially prior to April 15, 1983 when the Conservancy ordered all farming to be halted. Section 204(b) of the Law, 72 P.S. §5020-204(b) clearly provides that all property "from which any income or revenue is derived" shall be subject to taxation. The Conservancy points out, however, that it received no monetary return from the farming operation and that the farming was permitted to continue, with all profits going to the private farmer, to prevent erosion while Baird planned for the land's eventual conversion back to its natural state. Despite the fact that the Conservancy *itself* received no income from the farming of its land, we nevertheless conclude that during the time the land was being used commercially, and revenue was being derived therefrom, it came within the proscription of Section 204(b) of the Law. We note that this ruling only affects those portions of the land which were actually farmed and would have no applicability after the farming ended.

Turning next to the issue of public use of and access to the subject properties, the trial court found as fact that, "[t]he public makes considerable use of the Alsace Property at no charge." Slip op. at 9. Support in the record for this finding is sketchy at best and consists largely of testimony by the Conservancy's Executive Director that he noticed trash and tire tracks during several visits to the properties. R.R. at 195a. The record also establishes that the subject properties are posted with at least fifty to sixty "No Trespassing" signs. R.R. at 233a-34a, 238a. The trial court found as fact that these signs were posted "solely to prevent destructive, negative use, such as cutting trees, starting fires, trampling

the land, and racing motorcycles." Slip op. at 9. As the Superior Court stated in a case denying tax exempt status to a private bird and wildlife preserve, however, '[a]n essential element of public charity is the right of public visitation." *Hawk Mountain Sanctuary v. Berks County Board of Assessment,* 188 Pa. Superior Ct. 54, 57, 145 A.2d 723, 724 (1958). We believe that the practice of posting the subject properties with "No Trespassing" signs must draw into doubt the assertion that they are being "actually and regularly used" to benefit the general public as a public recreational area. Although we, therefore, question the trial court's finding of "considerable public use" of the properties, we will not reverse based solely on that ground.

We conclude that reversal is required, however, by virtue of the present lease agreement[2] between the Conservancy and Baird. This result is dictated by the clear language of Section 204(c) of the Law, 72 P.S. §5020-204(c) which provides, in pertinent part, as follows:

> [A]ll property, real and personal, actually and regularly used and occupied for the purposes specified in this section *shall be subject to taxation, unless the . . . corporation, so using and occupying the same, shall be seized of the legal or equitable title in the realty* and possessor of the personal property absolutely. (Emphasis added.)

Since, under the lease agreement, Baird is the corporation which uses and occupies the properties, and since Baird holds neither equitable nor legal title to those properties, we must conclude that its use and occu-

---

[2] Although the written leases between the Conservancy and Baird expired on January 31, 1983, it is undisputed that the leases continued on an oral basis at all times pertinent to the instant matter.

pancy cannot qualify the property for tax exemption. *See Greater Erie Economic Development Corp. Appeal.*

The Conservancy cites our decision in *Board of Revision of Taxes of Philadelphia v. United Fund of Philadelphia,* 11 Pa. Commonwealth Ct. 201, 314 A.2d 530 (1973) to support its position that the lease agreement does not preclude the exempt status of its properties. We believe that *United Fund* is distinguishable from the instant matter. In *United Fund,* we found that the part of the United Fund's building which it leased to other public charities was tax exempt under Section 204(a)(9) of the Law. Thus, the *United Fund* ruling was not based, as here, on Section 204(c) of the Law. Moreover, in *United Fund* the owner-charity used and occupied the premises jointly with its lessees. Although there is some record evidence of limited use of the properties by the Conservancy in maintenance matters, it is clear that Baird controls the property under the lease. R.R. at 237a-39a. Since the owner-charity must both use *and* occupy the premises under Section 204(c), we do not view the Conservancy's limited use of the properties as sufficient to meet the requirements of Section 204(c).

Based on the foregoing analysis, we must conclude that the trial court erred in finding the Conservancy's six properties in Alsace Township to be tax exempt. While the goals and purposes of the Conservancy are laudable, we are unable, based on the facts of record, to affirm the trial court's legal conclusion that the properties are presently being used for purely public charitable purposes as delineated in Section 204 of the Law.

As noted earlier, the Conservancy has filed a cross-appeal in which it challenges the trial court's holding regarding the Uniformity Clause. Specifically, the Conservancy contends that because another property it owns in Berks county has been granted tax exempt

status, the Board's denial of such status to the properties in the instant case is in violation of the Uniformity Clause which states that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax. . . ." Pa. Const. art. VIII, §1.

We would observe, first of all, that exemptions sought under Section 204 of the Law must be established based on the individual facts of each case. Clearly, the fact that a charitable organization is able to prove its entitlement to an exemption as to one of its properties would not necessarily establish its right to exempt status for other properties. However, even assuming that its properties were alike in all material respects, the Conservancy has nevertheless failed to prove a uniformity problem. The Conservancy's allegation that the Board has irrationally classified its properties into tax exempt and non-tax exempt categories is difficult to fathom. Rather than presenting a true classification challenge, it would appear that the Conservancy is actually objecting to the Board's application of Section 204 of the Law to its properties. It is clear, however, that in order to prove a constitutional violation of this nature, "there must be a deliberate and purposeful discrimination in the application of the tax." *Stilman v. Tax Review Board,* 402 Pa. 492, 493, 166 A.2d 661, 662 (1961); *see also Fisher Controls Co., Inc. v. Commonwealth,* 476 Pa. 119, 381 A.2d 1253 (1977). The Conservancy has failed to prove any such deliberate discrimination here. The cross-appeal must, therefore, be denied.

ORDER IN 3013 C.D. 1985

The order of the Court of Common Pleas of Berks County, dated October 10, 1985, as supplemented by order dated October 18, 1985, in the above-captioned

matter is reversed insofar as it relates to the six tracts of land referred to as the "Alsace Properties" in the Court's adjudication. The order is affirmed in all other respects.

ORDER IN 3334 C.D. 1985

The cross-appeal filed by the Berks County Conservancy in the above-captioned matter is hereby denied.