737 A.2d 1215

WILSON PARTNERS, L.P., Appellant,

v.

COMMONWEALTH of Pennsylvania, BOARD OF
FINANCE AND REVENUE, Appellee.

Academic Properties, Inc., Appellant,

v.

Commonwealth of Pennsylvania, Board
of Finance and Revenue, Appellee.

Supreme Court of Pennsylvania.

Submitted July 12, 1999.

Decided Oct. 1, 1999.

Joseph C. Bright, Kevin J. Moody, Wolf Block Schorr & Solis-Cohen, Philadelphia, for Wilson Partner, L.P.

Ronald H. Skubecz, Harrisburg, for Office of Atty. Gen.

Jill M. Strouss, Pa. Dept. of Revenue, Harrisburg, for PA Dept. of Revenue.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

In these consolidated direct appeals, Appellants present constitutional challenges to the imposition of a tax at the one-percent rate established by the Pennsylvania Realty Transfer Tax Act within the context of a real estate transfer in which one party to the transaction is exempt.

In late 1993, Appellants Wilson Partners, L.P. and Academic Properties, Inc. (collectively, "Taxpayers") entered into separate, unrelated agreements with the Federal Deposit Insurance Corporation, as receiver for a failed bank, for the purchase of various parcels of property located in Chester and Philadelphia Counties. In early 1994, pursuant to its agreement, Appellant Wilson Properties, L.P. ("Wilson") took title to the Chester County property and, in accordance with the Pennsylvania Realty Transfer Act,[1] paid realty transfer tax of $24,380.00 to the Department of Revenue. Such payment represented one percent of the purchase price and the entire tax imposed by the Commonwealth. In February of 1994, Appellant Academic Properties, Inc. took title to the Philadelphia-based properties and paid transfer taxes of $69,920.00, also representing one hundred percent of the state realty transfer taxes imposed.

1. Act of March 4, 1971, P.L. 6, No. 2, §§ 1101–C–1113–C (codified as amended at 72 P.S. §§ 8101–C–81134–C) (the "Act").

Taxpayers subsequently filed petitions in the Department of Revenue seeking full or partial refunds on the ground that imposition of the taxes constituted a violation of their rights under the state and federal constitutions. Specifically, Taxpayers contended that the Act unconstitutionally imposed an unequal tax burden upon a nonexempt party entering into a taxable real estate transaction with an exempt party. According to Taxpayers, such inequality resulted from the fact that a nonexempt party must bear exclusive liability to the Commonwealth for the taxes, whereas parties transacting with other nonexempt parties share the liability to the Commonwealth jointly and severally (Taxpayers characterized this circumstance as "doubling" their liability). Taxpayers claimed that this asserted inequality constituted discrimination violative of the supremacy clause of the United States Constitution, U.S. CONST. Art. VI, cl. 2, as well as the uniformity clause of the Pennsylvania Constitution, PA. CONST. Art. VIII, § 1, and the equal protection clause under the United States Constitution, U.S. CONST. Amend. XIV. The Department of Revenue denied the petitions, and the Board of Finance and Revenue affirmed.

The Commonwealth Court affirmed in a published decision and entered judgment in favor of the Commonwealth. *Wilson Partners, L.P. v. Commonwealth,* 723 A.2d 1079 (Pa.Cmwlth. 1999). It opened its analysis by noting that the Act uniformly imposes a single tax upon all transfers, with liability for the full amount of the payment generally being shared jointly and severally among the parties to the transaction, and with the parties being free to discharge such liability in any agreed manner. Although the scheme imposes exclusive liability upon a party transacting with an exempt entity such as a governmental unit, the Commonwealth Court rejected Taxpayers' claim that this results in either disparate treatment or inappropriate classification. To the contrary, the Commonwealth Court concluded that parties who transact with the United States simply are "no worse off" than parties who transact with nonexempt parties. *Wilson Partners,* 723 A.2d at 1084. It drew this conclusion based upon the following logic:

Contrary to the Taxpayers' contentions, the exempt status of one party to a real estate transfer transaction does not result in the other party paying twice the amount of tax otherwise owed by that party. As we stated above, both parties to a transaction are liable for the full amount of the transfer tax, and the classification of governmental parties as exempt does nothing to increase the liability of a nonexempt party. As a practical matter, in most taxable transfers the parties have apportioned the tax liability by agreement. Where the parties have not agreed to apportion the amount of the transfer tax, the liability inevitably falls upon the party that presents the instrument for recording; that party may then seek contribution from the other party.

*Wilson Partners*, 723 A.2d at 1083. The Commonwealth Court also concluded that any classification resulting under the Act rested upon a reasonable distinction between governmental and nongovernmental parties to real estate transfer transactions; thus, the Act conformed to principles of uniformity and equal protection. This direct appeal followed.[2]

In the Act, the General Assembly has imposed a one-percent tax upon certain transfers of real property in the Commonwealth.[3] Liability to the Commonwealth is ordinarily shared jointly and severally among the parties to the transaction. 72 P.S. § 8102-C; *see also* 61 Pa.Code § 91.111.

**2.** Pursuant to Section 723(b) of the Judicial Code, 42 Pa.C.S. § 723(b), final orders of the Commonwealth Court disposing of appeals from the Board of Finance and Revenue are appealable as of right to this Court. *See also* Pa.R.A.P. 1101(a)(2).

**3.** Specifically, the Act provides that:

[e]very person who makes, executes, delivers, accepts or presents for recording any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect of the transaction or any part thereof, ... a State tax at the rate of one percent of the value of the real estate represented by such document, which State tax shall be payable at the earlier of the time the document is presented for recording or within thirty days of acceptance of such document....

72 P.S. § 8102-C; *see also* 61 Pa.Code. § 91.111(b). Transactions that are excluded from the tax are identified in Section 8102-C.3, *see also* 61 Pa.Code § 91.193; however, the issues in this case center upon the

Where, however, the United States or the Commonwealth (or their instrumentalities, agencies or political subdivisions) are parties, they are exempt from the tax, 72 P.S. § 8102–C.2; *see also* 61 Pa.Code § 91.192.[4] In such instances, liability to the Commonwealth rests exclusively upon the nonexempt party or parties to the transaction, since the exempt status of one party does not relieve the other parties from liability for the full amount of the tax. 72 P.S. § 8102–C.2; *see also* 61 Pa.Code § 91.192(b). The liability of a nonexempt party may be discharged by the parties as they may agree; however, such contractual apportionment is without prejudice to the right of the Commonwealth to enforce the obligations of the nonexempt parties. *See* 61 Pa.Code § 91.192(b).

In this appeal, Taxpayers maintain that the Act discriminates against parties dealing with the federal government in violation of the federal supremacy clause, as well as that the asserted unequal burden imposed by the Act results in a violation of principles of uniformity and equal protection under the Pennsylvania and United States Constitutions.

With regard to the claim of impermissible discrimination, the reasoning employed by the United States Supreme Court in *Washington v. United States*, 460 U.S. 536, 103 S.Ct. 1344, 75 L.Ed.2d 264 (1983), is of relevance. In *Washington*, the United States brought an action seeking to invalidate a state statute generally imposing a sales tax for construction materials upon owners of construction projects, but, in the case of a federal project (in which the owner was exempt), shifting the legal incidence of the tax to the contractor. The government argued that such statutory scheme discriminated against federal contractors in violation of the federal supremacy clause,[5] since contractors engaged in private construction projects were not directly subject to an equivalent tax.

consequences of exempting individual parties from the tax, rather than upon the transactional exclusions.

4. This exemption is consonant with the federal government's immunity from state taxation. *See generally M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).

5. The supremacy clause requires that "[t]he Constitution, and the Laws of the United States ... shall be the supreme Law of the Land; and the

In considering the government's claim of discriminatory treatment, the Court directed its focus to the economic burden of the tax upon the transaction between the federal government and its contractor, rather than upon the differentiation by the state in selecting the entity subjected to the legal incidence of the tax. *See Washington,* 460 U.S. at 545, 103 S.Ct. at 1349 (stating that "[t]he important consideration, therefore, is not whether the State differentiates in determining what entity shall bear the legal incidence of the tax, but whether the tax is discriminatory with regard to the economic burdens that result"). Thus, the Court's concern centered, not upon the fact that federal contractors bore legal responsibility to the state for a tax that other contractors did not bear directly, but rather, upon the economic impact of the tax upon transactions involving federal contractors vis-à-vis the impact upon transactions involving contractors engaged in private construction. *See id.* at 545–46, 103 S.Ct. at 1350 (stating that "[t]he State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them"). The Court stated that where transactions are subject to an equivalent rate of taxation, but the state merely shifts the legal incidence of the tax in a non-discriminatory manner, leaving the parties free to apportion the economic burden of the tax among themselves, there is no impermissible discrimination. *Id.*[6]

Applying the principles to circumstances before it, the *Washington* Court found that, although the Washington sales

Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl.2.

**6.** The Supreme Court emphasized that there is no requirement of proof that the burdened private party actually negotiated an apportionment of the tax or that it necessarily would do so; rather, "the *opportunity* for the parties to allocate the economic burden of the tax among themselves [is] sufficient." *Washington,* 460 U.S. at 545, 103 S.Ct. at 1349 (emphasis in original); *see also id.* at 542 n. 4, 103 S.Ct. at 1348 n. 4 ("it makes no difference to the contractor (or to the purchasers) which of them is required to pay the tax to the State, as long as they have the opportunity to allocate the burden among themselves by adjusting the price").

tax scheme shifted the legal incidence of the tax from project owner to contractor in circumstances where the property owner was exempt, the scheme was not discriminatory. According to the Court, since the taxing statute imposed an equivalent rate of taxation upon all sales of construction materials and did not deprive the parties of the opportunity to apportion among themselves the economic burden of the tax, it thus required federal contractors to bear no greater tax burden than was shouldered by private buyers of construction work or which could be passed on by them to their contractors. *Id.* at 545, 103 S.Ct. at 1349.[7] *See generally State Dep't of Fisheries v. DeWatto Fish Co.,* 100 Wash.2d 568, 674 P.2d 659, 662 (1983)(stating, by analogy to *Washington* in the context of a commerce clause challenge, that "the identity of the party bearing the legal incidence of the tax shifted to reflect the fact that certain parties were not subject to state taxation is of no practical or constitutional significance since the total tax rate remained equal and the parties had the opportunity to allocate the burden among themselves").

▪ In the present case, like the situation in *Washington*, the realty transfer taxes imposed upon Taxpayers' transac-

---

**7.** We recognize that the *Washington* decision arose in the context of a claim by the federal government that the Washington system of revenue collection circumvented its tax immunity. Nevertheless, *Washington's* reasoning is pertinent to this case, in part because Taxpayers invoke the FDIC's tax immunity as a basis for relief in their favor. In this regard, it is significant that the Court has held that non-discriminatory efforts by states to tax the federal government indirectly may be justified. *See Washington,* 460 U.S. at 547, 103 S.Ct. at 1350; *see generally Minneapolis Star and Tribune v. Minnesota Commissioner of Revenue,* 460 U.S. 575, 590, 103 S.Ct. 1365, 1374, 75 L.Ed.2d 295 (1983)(stating that "[i]n spite of the rule against direct taxation of the Federal Government, States remain free to impose the *economic* incidence of a tax on the Federal Government, as long as that tax is not discriminatory[;] [i]n that situation, then, the valid state interest in requiring federal enterprises to bear their share of the tax burden will often justify the use of differential methods of taxation" (emphasis in original; citations omitted)). More fundamentally, *Washington* is directly relevant here because the federal government's arguments in that case were premised upon its claim that the Washington taxing scheme treated federal contractors in a discriminatory manner, and the Court expressly rejected such contention.

tions with the FDIC are also an integral part of a uniform system of revenue collection that applies equally to all non-excluded transactions within the Commonwealth,[8] regardless of the identity of the parties. In all cases, the transaction implicates a one-percent levy. The Act does not direct how the economic burden of the tax must be apportioned among the parties, and, indeed, pursuant to Department of Revenue regulations, such determination is expressly left to the parties. The complained-of provisions of the Act merely remove liability from the federal government, as must be done to accommodate its immunity from taxation.[9] Since, under *Washington,* the economic impact of the tax in such circumstances is deemed uniform, there is no cognizable discrimination.[10]

 In addition to the challenge under the supremacy clause, Taxpayers also raise claims under the uniformity and equal protection clauses of the Pennsylvania and United States Constitutions.[11] It is well established that, in matters

**8.** As previously noted, Petitioners make no claim regarding the validity of the enumerated exclusions for transactions. *See supra* note 3.

**9.** Accordingly, the Act does not even go so far as to shift the burden among the parties (as was the case in *Washington* ). Rather, pursuant to the Act, Taxpayers would in any event have borne the legal incidence of the tax, albeit jointly and severally with the sellers, had the transactions been among private parties.

**10.** We acknowledge that, viewing the transaction from Taxpayers' perspective, there is a degree of differential treatment, since Taxpayers bore exclusive liability for the taxes; whereas, those involved in transactions among private parties share liability jointly and severally. Thus, the Commonwealth Court's statement that Taxpayers are "no worse off" is correct only when viewed through the framework of *Washington,* which requires that the transaction be viewed from a wider perspective and holds that the complained-of differences lack constitutional significance.

**11.** The uniformity clause of the Pennsylvania Constitution provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under the general laws." PA. CONST. art. VIII, § 1. To be uniform, a tax must "operate alike on the classes of things or property subject to it." *Commonwealth v. Overholt & Co.,* 331 Pa. 182, 191, 200 A. 849, 853 (Pa.1938). The analysis under the uniformity clause of Pennsylvania's Constitution is generally the same as that under the equal protection clause of the United States Constitution. *Leonard v. Thornburgh,* 507 Pa. 317, 320, 489 A.2d 1349, 1351 (1985).

of taxation, the General Assembly possesses wide discretion, and a tax enactment will not be invalidated unless it " *'clearly, palpably,* and *plainly* violates the Constitution.'* " *Leonard,* 507 Pa. at 320–21, 489 A.2d at 1351 (quoting *Commonwealth v. Life Assurance Co. of Pa.,* 419 Pa. 370, 377, 214 A.2d 209, 214 (1965), *appeal dismissed,* 384 U.S. 268, 86 S.Ct. 1476, 16 L.Ed.2d 524 (1966))(emphasis in original). When challenging a taxing statute, it is the taxpayer's burden to demonstrate, not only that the enactment results in some form of classification, but also that such classification is unreasonable, in that it is not rationally related to any legitimate state purpose. *Leonard,* 507 Pa. at 321, 489 A.2d at 1352.

■ Neither the equal protection clause nor the uniformity clause requires absolute equality and perfect uniformity in taxation, and any doubts as to the constitutionality of the statute are to be resolved in favor of upholding the statute. *Id.* at 321, 489 A.2d at 1352. *See generally Lee Hosp. v. Cambria County Bd. of Assessment Appeals,* 162 Pa.Cmwlth. 38, 52, 638 A.2d 344, 351, *appeal discontinued,* 538 Pa. 661, 648 A.2d 791 (1994).

■ Although *Washington* dealt with a supremacy clause challenge, we find its reasoning persuasive in the uniformity of taxation and equal protection contexts as well. While parties dealing with the federal government encounter a degree of differential treatment in terms of the legal incidence of taxation under the Act, this difference is without constitutional import, since the economic burden which they bear is deemed to be equivalent. *See generally DeWatto,* 674 P.2d at 659 (stating that "[t]here is ample support for the common-sense view that merely shifting the legal incidence of a tax from a nontaxable to a taxable party is not discriminatory"). We also adopt the Commonwealth Court's conclusion that the taxing scheme under the Act is grounded in a rational basis, as it functions in a non-discriminatory manner to ensure that equal revenues will be collected for all non-excluded transfers of real estate occurring within the Commonwealth. *See generally Commonwealth v. Life Assurance Co. of Pa.,* 419 Pa. 370, 377,

214 A.2d 209, 214 (1965)(stating that "[s]o long as the classification imposed is based upon some standard capable of reasonable comprehension, be that standard based upon ability to produce revenue or some other legitimate distinction, equal protection of the law has been afforded").

The judgment of the Commonwealth Court is affirmed.