COMMUNITY OPTIONS,
INC., Appellant,

v.

BOARD OF PROPERTY AS-
SESSMENT, APPEALS
AND REVIEW.

Community Options, Inc.

v.

Board of Property Assessment, Appeals
and Review and Borough of Churchill,
an Interested Party.

Borough of Churchill, Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 2000.
Decided Nov. 21, 2000.
Reargument Denied Jan. 29, 2001.

---

Andrea Geraghty, Pittsburgh, for appellant.

Robert W. Goehring, Pittsburgh, for appellee.

BEFORE: KELLEY, Judge,
FLAHERTY, Judge, and NARICK,
Senior Judge.

KELLEY, Judge.[1]

In these cross-appeals, Community Options, Inc. and the Borough of Churchill (Borough) appeal from the order of the Court of Common Pleas of Allegheny County (trial court) that affirmed the orders of the Allegheny County Board of Property Assessment, Appeals and Review (Board) denying Community Options' applications for tax-exempt status for its properties for the years 1996 and 1997, and granted tax-exempt status for Community Options' properties for the year 1998 and future years pursuant to the provisions of the Institutions of Purely

---

1. This case was reassigned to the author on April 25, 2000.

Public Charity Act (Act).[2] We affirm in part and reverse in part.

Community Options is a New Jersey non-profit corporation authorized to do business in Pennsylvania, eight other states, and the District of Columbia. The mission of Community Options is to provide housing and related services to individuals with a primary diagnosis of mental retardation. Community Options owns and operates a number of group homes in a number of municipalities in Allegheny County including the Borough. In addition, it has been granted an exemption from Federal Income Tax pursuant to Section 501(c)(3) of the Internal Revenue Code.[3]

In 1996 and 1997, Community Options filed applications with the Board seeking tax-exempt status for its properties located in Allegheny County. When the Board denied these applications, Community Options filed appeals in the trial court. In the appeals, Community Options alleged, *inter alia,* that it met its burden of establishing that was entitled to a tax exemption as provided for in Article 8, Section 2(a)(v)

of the Pennsylvania Constitution[4] and the provisions of the General County Assessment Law (Law)[5]. The appeals were consolidated with the appeals of other non-profit entities in Allegheny County.

On May 26, 1999, the trial court issued an order and opinion disposing of Community Options' appeals. The trial court determined that Community Options' properties were not entitled to tax-exempt status for the years 1996 and 1997 pursuant to the Pennsylvania Supreme Court's interpretation of Article 8, Section 2(a)(v) of the Pennsylvania Constitution in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985), and this Court's interpretation of this provision in *Community Service Foundation, Inc. v. Bucks County Board of Assessment and Revision of Taxes,* 672 A.2d 373 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 546 Pa. 696, 687 A.2d 379 (1996). However, the trial court also determined that Community Options' properties were entitled to tax-exempt status for the year 1998 and future years pursuant to the provisions of

**2.** Act of November 26, 1997, P.L. 508, 10 P.S. §§ 371—385.

**3.** 26 U.S.C. § 501(c)(3).

**4.** Article 8, Section 2(a)(v) of the Pennsylvania Constitution states:
    (a) The General Assembly may by law exempt from taxation:
            *       *       *
    (v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.
PA. CONST. art. VIII, § 2(a)(v).

**5.** Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §§ 5020–1–5020–602. In particular, Section 204(a)(3) of the Law provides, in pertinent part:
    (a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:
            *       *       *
    (3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or chari-

ty, ... with the ground thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose: And provided further, That any charitable organization providing residential housing services in which the charitable non-profit organization receives subsidies for at least ninety-five per centum of the residential housing units from a low-income Federal housing program shall remain a "purely public charity" and tax exempt provided that any surplus from such assistance or subsidy is monitored by the appropriate governmental agency and used solely to advance common charitable purposes with the charitable organization...

72   P.S. § 5020–204(a)(3).

Section 5 of the Act[6], which had been enacted in November of 1997. Finally, the trial court rejected Community Options' claim that the classification of its properties as not tax-exempt violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution[7] and Article 8, Section 1 of the Pennsylvania Constitution.[8] Community Options and the Borough filed the instant cross-appeals.

In these cross-appeals, Community Options claims[9] that the trial court erred in determining that its properties were not entitled to tax-exempt status for the years 1996 and 1997. The Borough claims that the trial court erred in determining that Community Options' properties were entitled to tax-exempt status for the year 1998 and future years. Finally, Community Options claims that the trial court erred in determining that the classification of its properties as taxable does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 8, Section 1 of the Pennsylvania Constitution.

■■■ We initially note that this Court's scope of review in tax assessment appeals is limited to a determination of whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by substantial evidence. *Wilson Area School District v. Easton Hospital,* 561 Pa. 1, 747 A.2d 877 (2000). It is well settled that the trial court is the fact finder in tax assessment appeals and all matters of credibility and evidentiary weight are within the province of the trial court as the finder of fact. *Appeal of M.W. Kellogg Co.,* 89 Pa. Cmwlth. 320, 492 A.2d 130 (1985); *Appeal of Mellon Bank, N.A.,* 78 Pa.Cmwlth. 463, 467 A.2d 1201 (1983). Thus, the findings of the trial court are binding on appeal to this Court where they are supported by substantial evidence of record. *St. Margaret Seneca Place v. Board of Property Assessment, Appeals and Review,* 536 Pa. 478, 640 A.2d 380 (1994). In addition, the question of whether an institution is one of "purely public charity", for purposes of tax exemption under Article 8, Section 2 of the Pennsylvania Constitution, is a mixed question of law and fact on which the trial court's decision is binding absent an abuse of discretion or a lack of supporting evidence. *Mars Area School District v. United Presbyterian Women's Association of North America,* 554 Pa. 324, 721 A.2d 360 (1998); *G.D.L. Plaza Corporation v. Council Rock School District,* 515 Pa. 54, 526 A.2d 1173 (1987).

**6.** Section 5 of the Act provides, in pertinent part:

> **(a) General rule.**—An institution of purely public charity is an institution which meets the criteria set forth in subsections (b), (c), (d), (e) and (f). An institution which meets the criteria specified in this section shall be considered to be founded, endowed and maintained by public or private charity.
> **(b) Charitable purpose.**—The institution must advance a charitable purpose...
> **(c) Private profit motive.**—The institution must operate entirely free from private profit motive...
> **(d) Community service.**—
> (1) The institution must donate or render gratuitously a substantial portion of its services...
> **(e) Charity to persons.**—
> (1) The institution must benefit a substantial and indefinite class of persons who are legitimate subjects of charity...

> **(f) Government service.**—The institution must relieve the government of some of its burden...

10 P.S. § 375(a), (b), (c), (d), (e), (f).

**7.** The Fourteenth Amendment to the Unites States Constitution states, in pertinent part:

> [N]o State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

**8.** Article 8, Section 1 of the Pennsylvania Constitution states, in pertinent part:

> All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax...

Pa. Const. art. VIII, § 1.

**9.** In the interest of clarity, we reorder the claims raised in the instant cross-appeals.

Community Options first claims that the trial court erred in determining that its properties were not entitled to tax-exempt status for the years 1996 and 1997. In particular, Community Options asserts that it is a "purely public charity" under the provisions of Article 8, Section 2(v) of the Pennsylvania Constitution and, as a result, its properties are entitled to exemption from taxation.

◼ In *Hospital Utilization Project* the Pennsylvania Supreme Court reviewed extensive case law regarding whether an entity may qualify for tax exemption as a "purely public charity" under Article 8, Section 2(v) of the Pennsylvania Constitution, and enunciated a five-part test which summarized the minimum constitutional requirements:

[A]n entity qualifies as a purely public charity if it possesses the following characteristics.

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operate entirely free from private profit motive.

*Hospital Utilization Project*, 507 Pa. at 21–22, 487 A.2d at 1317. An entity seeking a tax exemption must meet all five prongs of the *Hospital Utilization Project* test. *G.D.L. Plaza Corporation.*

◼ In the instant case, only the fourth prong of the *Hospital Utilization Project* test, i.e., whether Community Options relieves the government of some of its burden, is relevant. With respect to this prong, the Pennsylvania Supreme Court has stated:

[T]he [*Hospital Utilization Project*] test of whether an institution has relieved the government of some of its burden does not require a finding that the institution has fully funded the care of some people who would otherwise be fully funded by the government. The test is whether the institution bears a substantial burden that would otherwise fall to the government.

*St. Margaret Seneca Place*, 536 Pa. at 487, 640 A.2d at 385.

In *Community Service Foundation, Inc.*, this Court considered, *inter alia*, whether a non-profit corporation (CSF) which provided residential, educational and counseling services to troubled youths demonstrated that it was a "purely public charity" in that it relieved the government of some of its burden as required by *Hospital Utilization Project.* In that case, it was determined that although CSF received payments from some of the youths' parents and charitable grants and donations, CSF was almost entirely funded by the county in which it operated. In determining that CSF failed to demonstrate that it met the fourth prong of the *Hospital Utilization Project* test, this Court stated the following:

Although there is no requirement that an institution carry the cost of programs which would otherwise be the government's responsibility, whether or not the institution "pays a substantial portion of the cost" of a governmental service is a significant factor in determining eligibility for the charitable tax exemption. The amount of charitable contributions received by CSF is crucial because whether CSF relieves some of the County's burden depends, at least in part, on absorbing the cost of programs which the County is obligated to provide. If CSF programs are not substantially funded by private contributions rather than government grants CSF is not bearing a substantial burden that would otherwise fall to the government, but is essentially contracted by the County to provide those services for less cost. Tax exempt status is properly reserved for organizations which abate government costs, not for those who perform govern-

ment responsibilities as independent contractors.

*Community Service Foundation, Inc.*, 672 A.2d at 376.[10]

In the instant case, with respect to Community Options' funding, the trial court made the following findings:

For fiscal year 1997 (7/1/97–6/30/98), Community Options projected gross revenues of approximately $26 million from its operations in Pennsylvania and the nine other states. Mr. Stack[, Community Options' President and Chief Executive Officer,] did not offer any testimony as to how much of this revenue was nongovernmental.

Community Options submitted the following information for the 1993, 1994, 1995, and 1996 fiscal years:

| FISCAL YEAR | TOTAL REVENUE | NONGOVERNMENTAL |
| --- | --- | --- |
| 1996–1997 | $15,057,281 | $453,670 |
| 1995–1996 | $ 8,783,321 | $273,974 |
| 1994–1995 | $ 5,199,244 | $308,831 |
| 1993–1994 | $ 3,542,350 | $123,210 |

None of the testimony offered by Community Options described the various items ... that made up the "nongovernmental" revenue. In addition, Community Options offered almost no explanation as to whether and how any of this "nongovernmental revenue" was used to support its program. The only testimony addressing this issue is in Mr. Stack's deposition. He testified that Community Options developed costs associated with the services provided within Allegheny County. Those costs were reimbursed by the County. "We also supplement that money with fundraising dollars, as well, whether it be to make the house more attractive through donations and painting or in donations in furniture or donations in other kinds of things. Too, we also have volunteer programs where we get people involved in that, but the county and Community Options negotiate a contract based on the person's needs." There was no testimony as to the amount of outside funds that were expended at any time. There was no testimony as to what amount, if any, of outside funds [that]

10. *Compare Mars Area School District*, in which the Pennsylvania Supreme Court considered the tax-exempt status of a facility which housed children that had been adjudicated delinquent or dependent. The Court noted that although the facility received per diem payments from the counties it serves, the facility also received funds from donations, endowment income and funds from the federal school lunch program. In addition, the Court noted that the facility gratuitously covered an average of 24% of its annual operating expenses and operated at a deficit as fee revenues did not meet or exceed its operating expenses.

In determining that the facility had met the fourth prong of the *Hospital Utilization Project* test, the Court stated the following, in pertinent part:

In short, the situation is not one where county payments cover the full cost of the services provided, as would normally be the case if the county had hired an independent contractor to provide the services in question. See [*Community Service Foundation* (entities that perform governmental services as independent contractors without absorbing a substantial portion of the cost of the services do not qualify as purely public charities since they do not relieve the government of its burden)]. Here, the costs incurred by government would be much greater were it necessary for counties to provide the grounds and facilities, and incur the operating deficits and depreciation expenses, rather than simply pay the existing per diem fees per child.

The fact that there are per diem fees received from the counties does not negate the institution's charitable status... Inasmuch as [the facility] bears the costs for a substantial portion of its facilities and services, it relieves the government of a burden that would otherwise befall it.

*Mars Area School District*, 554 Pa. at 328–29, 721 A.2d at 362.

were spent in Allegheny County. Furthermore, as shown in Community Options' reports on Financial Statements, for the year ended June 1994, revenues exceeded expenses by $291,074; for the year ended June 1995, revenues exceeded expenses by $302,327; and for the year ended June 1996 revenues exceeded expenses by $735,807.

In summary, I find that the evidence that Community Options submitted does not support a finding that the government funding which it receives from Allegheny County is insufficient to permit Community Options to meet the needs of the persons whom it is serving or a finding that the quality of the Community Options programs has been enhanced thorough private contributions (either in-kind or financial)...

Trial Court Opinion, pp. 7–9 (footnotes and citations omitted).

The foregoing findings are supported by substantial evidence of record. As a result, they are binding on this Court. *St. Margaret Seneca Place.* Moreover, these findings support the trial court's conclusion that Community Options failed to demonstrate that it met the fourth prong of the five-pronged test outlined in *Hospital Utilization Project. Community Service Foundation, Inc.* Thus, the trial court did not err in determining that Community Options' properties were not entitled to tax-exempt status for the years 1996 and 1997. *Id.*

The Borough claims that the trial court erred in determining that Community Options' properties were entitled to tax-exempt status for the year 1998 and future years. We agree.

As outlined above, the trial court properly determined that Community Options had failed to demonstrate that it qualified as a "purely public charity" under the five-

pronged test enunciated in *Hospital Utilization Project.* In granting an exemption to Community Options' properties for the year 1998 and future years, the trial court determined that the provisions of Section 5 of the Act controlled, and Community Options had demonstrated its entitlement to an exemption under these statutory provisions. *See* Trial Court Opinion, pp. 10–23.

∎ However, the question of whether an entity seeking or defending a tax exemption is a "purely public charity", within the meaning of Article 8, Section 2(a)(v) of the Pennsylvania Constitution, is a preliminary question which must be addressed before the question of whether that entity meets the qualifications of a statutory exemption can be reached. *G.D.L. Plaza Corporation; Hospital Utilization Project; School District of the City of Erie v. Hamot Medical Center,* 144 Pa.Cmwlth. 668, 602 A.2d 407 (1992). As the Pennsylvania Supreme Court has stated:

In [*Hospital Utilization Project*], which involved a different statutory exemption than that presented here, we did not decide whether the organization met the statutory qualifications for the exemption because it failed to meet the constitutional requirements. As a result the legislature lacked authority to grant an exemption which would have extended to the organization and a statute which purported to do so would have been invalid. *Id.* at 12–13, 487 A.2d at 1311–12. The standards set out in *Hospital Utilization Project* reflect the minimum constitutional qualifications for being an appropriate subject of tax exemption. They do not, of themselves, establish eligibility for exemption.

*G.D.L. Plaza Corporation,* 515 Pa. at 59, n. 2, 526 A.2d at 1175, n. 2.[11] *See also Don-*

11. In this regard, it is also important to note the provisions of Article 8, Section 5 of the Pennsylvania Constitution which states that, "[a]ll laws exempting property from taxation, other than the property above enumerated

shall be void." Pa. Const. art. VIII, § 5. It has long been recognized that this provision absolutely prohibits the General Assembly from providing a statutory exemption beyond those enumerated in Article 8, Section 2 of

*ohugh's Appeal*, 86 Pa. 306, 309–10 (1878) ("[I]t is conceded that the legislature cannot go outside the class of cases in which the constitution permits exemption from taxation, but it is to be remembered that the provision of the constitution is not a grant of power to the legislature, which belongs elsewhere, and is therefore to be strictly construed as in derogation of the people's right. On the contrary, it is a restriction upon a legislative power which would otherwise be unlimited and unquestionable. It is a tying up of the legislative hand...").

■ Thus, once the trial court determined that Community Options did not meet the *constitutional* definition of a "purely public charity", it was unnecessary to then consider whether or not it met the *statutory* definition of a "purely public charity" as outlined in Section 5 of the Act. *Id.; Hospital Utilization Project; School District of the City of Erie.* Rather, because Community Options did not meet the minimum constitutional qualifications for being an appropriate subject of tax exemption, it could not qualify for the statutory exemption outlined in Section 5 of the Act. *Hospital Utilization Project; School District of the City of Erie.* As a result, the trial court erred in determining that Community Options' properties were entitled to tax-exempt status for the year 1998 and future years pursuant to Section 5 of the Act.

Finally, Community Options claims that the trial court erred in determining that the classification of its properties as taxable does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 8, Section 1 of the Pennsylvania Constitution. In particular, Community Options asserts that the Board has used an arbitrary method of determining the tax-exempt status of similarly situated non-profit entities in Allegheny County. As a result, Community Options asserts that this selective imposition of property taxes violates equal protection and uniformity of taxation, and compels an exemption for its properties.

■ Initially, we note that claims raised under the equal protection clause and the uniformity clause are generally analyzed in the same manner. *Wilson Partners, L.P. v. Commonwealth,* 558 Pa. 462, 737 A.2d 1215 (1999); *Leonard v. Thornburgh,* 507 Pa. 317, 489 A.2d 1349 (1985); *Transcontinental Gas Pipe Line Corporation v. Commonwealth,* 153 Pa. Cmwlth. 60, 620 A.2d 614 (1993). Neither the equal protection clause nor the uniformity clause requires absolute equality or perfect uniformity in taxation. *Wilson Partners, L.P.; Leonard; Transcontinental Gas Pipe Line Corporation.* In addition, a taxpayer who alleges that the administration of a tax violates its right to be taxed equally and uniformly with others in

our Constitution. *See, e.g., Board of Christian Education of Presbyterian Church in United States v. School District of City of Philadelphia,* 171 Pa.Super. 610, 91 A.2d 372, 374 (1952) ("[T]he two sections, read together, impose limitations upon the power of the legislature to exempt property from taxation. It is beyond legislative competence to exempt more than the property used as a place of public worship or for purely charitable activities. Moreover, an exemption exists, not by virtue of the provisions of the Constitution, but only by the force of a valid statute enacted under it."). As a result, qualifying for an exemption as a "purely public charity" must be first measured by the constitutional language, and not the statutory language. *See Hospital Utilization Project,* 507 Pa. at 13, 487

A.2d at 1312 ("Hence, we begin our analysis by recognizing that regardless whether HUP qualifies as a 'charitable organization' under [the statutory exemption], as defined by the Pennsylvania Code..., it must first qualify under the Constitution as a 'purely public charity'... Because we reach the conclusion in our following discussion that HUP is not a 'purely public charity' within the meaning of the Constitution, we do not reach whether HUP qualifies under the Pennsylvania Code definition.").

Thus, the Act is a nullity as to those parts which attempt to define "purely public charity" as a constitutional provision. The General Assembly is empowered to only legislate the category of the constitutional "purely public charities" which are exempt from taxation.

its class must affirmatively demonstrate a deliberate and purposeful discrimination in the application of the tax before these constitutional safeguards will be deemed to have been violated. *Fisher Controls Company, Inc. v. Commonwealth*, 476 Pa. 119, 381 A.2d 1253 (1977); *Transcontinental Gas Pipe Line Corporation; Berks County Board of Assessment and Revision of Taxes v. Berks County Conservancy*, 102 Pa. Cmwlth. 64, 517 A.2d 572 (1986); *Wiker v. Roux*, 49 Pa.Cmwlth. 513, 412 A.2d 176 (1980).

■ In this case, Community Options cites the testimony of a Board employee in support of its assertion that the Board has used an unconstitutional method of determining the tax-exempt status of similarly situated non-profit entities. *See* Brief for Appellant, pp. 9–12. However, this testimony merely demonstrates that, in light of our opinion in *Community Service Foundation, Inc.*, the Board has undertaken to review the tax-exempt status of all of the properties of non-profit entities throughout Allegheny County. At best, this testimony demonstrates that the Board has employed an inefficient means of determining the tax-exempt status of all of these properties. This evidence in no way demonstrates a course of deliberate and purposeful discrimination on the part of the Board. As a result, Community Options has failed to affirmatively show a violation of either the equal protection clause or the uniformity clause. *Fisher Controls Company,*

*Inc.; Transcontinental Gas Pipe Line Corporation; Berks County Board of Assessment and Revision of Taxes; Wiker.*

■ Moreover, Community Options' assertion that its properties should be granted tax-exempt status, due to exemptions that have been purportedly granted to the properties of other non-profit entities, is untenable. As this Court has previously stated:

> Moreover, a decision regarding the charitable nature of an institution is a mixed question of fact and law which depends on the unique factual matrix of each case. *In Re: Appeal of Doctor's Hospital*, [51 Pa.Cmwlth. 31, 414 A.2d 134 (Pa.Cmwlth.1980)]. We have determined here that the Board, as a matter of law, reached the correct decision regarding Appellant['s tax-exempt status] based on the facts presented. Thus, even if Appellant could prove that the Board incorrectly granted a tax exemption in *another* case, such evidence would not warrant the grant of tax-exempt status to Appellant in the instant matter. *See Stilman v. Tax Review Board*, 402 Pa. 492, 166 A.2d 661 (1961) (prior error in interpreting a valid tax statute is insufficient to establish a denial of constitutional rights)...

*Wyoming Valley Montessori Association, Inc. v. Board of Assessment Appeals of Luzerne County*, 110 Pa.Cmwlth. 458, 532 A.2d 931, 935 (1987).[12] As a result, the trial court did not err in failing to grant

---

12. *See also Berks County Board of Assessment and Revision of Taxes*, 517 A.2d at 576 ("[T]he Conservancy contends that because another property it owns in Berks County has been granted tax exempt status, the Board's denial of such status to the properties in the instant case is in violation of the Uniformity Clause... We would observe, first of all, that exemptions sought under Section 204 of the Law must be established based on the individual facts of each case. Clearly, the fact that a charitable organization is able to prove its entitlement to an exemption as to one of its properties would not necessarily establish its right to exempt status for other properties. However, even assuming that its properties were alike in all material respects, the Con- servancy has nevertheless failed to prove a uniformity problem. The Conservancy's allegation that the Board has irrationally classified its properties into tax exempt and non-tax exempt categories is difficult to fathom. Rather than presenting a true classification challenge, it would appear that the Conservancy is actually objecting to the Board's application of Section 204 of the Law to its properties. It is clear, however, that in order to prove a constitutional violation of this nature, 'there must be a deliberate and purposeful discrimination in the application of the tax.' The Conservancy has failed to prove any such deliberate discrimination here."). (citations omitted).

tax-exempt status to Community Options' properties based on its equal protection clause and uniformity clause claims.

Accordingly, that portion of the order of the trial court affirming the Board's denial of a tax exemption for Community Options' properties for the years preceding 1998 is affirmed; that portion of the order of the trial court reversing the Board's denial of a tax exemption for Community Options' properties for the year 1998 and future years is reversed.

## *ORDER*

AND NOW, this 21st day of November, 2000, that portion of the order of the Court of Common Pleas of Allegheny County, dated May 26, 1999 at Nos. GD 96–007578, GD 97–000027, GD 97–007953, GD 97–007954 and GD 97–013112, denying a tax exemption to the properties of Community Options, Inc. for the years 1996 and 1997, is affirmed; that portion of the order granting a tax exemption to the properties of Community Options, Inc. for the year 1998 and future years, is reversed.

NARICK, Senior Judge, dissenting.

I respectfully dissent. I agree with the Majority that Appellants requests for a tax exemption for its properties for 1996 and 1997, should be denied. However, for the reasons set forth herein, I would grant its properties exemption from taxation for 1998 and future years.

I agree that in order to qualify for tax exemption in Pennsylvania, the taxpayer must meet the five-part test as outlined in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985). Only part four of the test is in question here: whether Appellant relieves the government of some of its burden.

The government was relieved of some of its burden. In 1997, with the enactment of the Institutions of Purely Public Charity Act (Act 55), Act of November 26, 1997, P.L. 508, *as amended,* 10 P.S. §§ 371–385, the General assembly in order to eliminate the vagueness of the term, further defined "institutions of purely public charity" and exempted from taxation certain institutions that did not meet the HUP standards **as construed** by this Court.

Section 375(f)(1–6) of Act 55 provides in pertinent part as follows:

(f) Government service. The institution must relieve the government of some of its burden. This criterion is satisfied if the institution meets any one of the following:

(1) Provides a service to the public that the government would otherwise be obliged to fund or to provide directly or indirectly or to assure that a similar institution exists to provide the service.

(2) Provides services in furtherance of its charitable purpose which are either the responsibility of the government by law or which historically have been assumed or offered or funded by the government.

(3) Receives on a regular basis payments for services rendered under a government program if the payments are less than the full costs incurred by the institution, as determined by generally accepted accounting principles.

(4) Provides a service to the public which directly or indirectly reduces dependence on government programs or relieves or lessens the burden borne by government for the advancement of social, moral, educational or physical objectives.

(5) Advances or promotes religion and is owned and operated by a corporation or other entity as a religious ministry and otherwise satisfies the criteria set forth in section 5.

(6) Has a voluntary agreement under section 7.

10 P.S. § 375(f)(1–6). Through Act 55, the Legislature determined that an outside service provider relieves the government of some of its burden whenever it provides a service to the public that the government would otherwise be obligated to provide or

provides services in furtherance of its charitable purpose which are the responsibility of government by law or which historically have been assumed or offered or funded by government. Thus, an outside service provider is relieving the government of some of its burden, even though it is not absorbing any costs of these programs which the government is obligated to provide.

The common pleas court was correct in determining that Appellant met the minimum requirements under the constitution as read in connection with Act 55, and was exempt from taxation for 1998, and future years.

Accordingly, I would affirm.