747 A.2d 877

**WILSON AREA SCHOOL DISTRICT, Borough of Wilson, and Northampton County, Appellants,**

v.

**EASTON HOSPITAL, Appellee.**

Supreme Court of Pennsylvania.

Argued Nov. 18, 1998.

Decided March 24, 2000.

Donald F. Spry, II, Bangor, Ira Weiss, Pittsburgh, for appellant, Wilson Area school Dist.

David M. Backenstoe, Sol., for appellant, Northampton County.

Louis S. Minotti, Jr., Sol., for appellant, Wilson Borough.

Roland Morris, Larry Silver, Philadelphia, for appellee, Easton Hosp.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

4

## OPINION

CAPPY, Justice.

The sole issue before us is whether Easton Hospital (hereafter "Hospital") operates "entirely free of a private profit motive," and is therefore exempt from real estate taxes. For the reasons set forth herein, we determine that in assessing whether the Hospital operates "entirely free of a private profit motive," the appropriate inquiry is whether the Hospital's surplus revenue is being utilized in furtherance of its charitable purpose. Accordingly, we affirm the lower courts.

The Hospital was founded and maintained by charity. It is an acute care community facility with an open admissions policy, as well as a teaching institution. The Hospital maintains four tax-exempt properties, which are the focus of the instant matter, and five taxable properties. The four tax-exempt properties are the Hospital, Outlook House, a macadam parking lot and a clinic with a parking garage.

In 1986, the Hospital formed Valley Health as a parent corporation in order to assist the Hospital in matters related to non-acute health care. Valley Health operates a foundation to raise money for the Hospital and other charitable undertakings. In turn, Valley Health created other subsidiaries including Valley Health Services, Inc., a for-profit corporation, Valley Health Foundation, Valley Health Employee Health Network, and Valley Health Community Medical Services.[1] Valley Health was created, inter alia, to conduct fundraising and for-profit activities. Since the creation of the Valley Health, the Hospital has made loans to Valley Health and its subsidiaries. Some of these loans were made without the expectation of repayment.

During the tax years at issue, 1990–1995, the Hospital donated services to individuals or the community ranging from $5,536,000 to $8,661,000.[2] These figures represent the total

1. Valley Health and its subsidiaries own other properties, none of which is the focus of the instant litigation.

2. The Commonwealth Court opinion provides a complete breakdown of all the figures involved in the instant matter. *Wilson Area School Dist. v. Easton Hosp.*, 708 A.2d 835 (Pa.Commw.1998).

value of the Hospital's services that were rendered gratuitously to individuals, including traditional uncompensated charity care, Medicaid and Medicare shortfalls, and bad debt expenses. They also represent services rendered to the community, including pastoral care, Meals–on–Wheels, social services, and educational programs. In all of the tax years at issue, the Hospital's donations exceeded its net income by a significant margin.[3] In addition, donations to the community exceeded contributions made to the Hospital from the community.

On August 9, 1989, the Wilson Area School District filed a challenge to the Hospital's tax-exempt status for purposes of real estate taxes. The Borough of Wilson and Northampton County (hereafter these parties will be referred to collectively as "appellants") joined the appeal.

■ Following hearings on the taxing authorities appeal[4], the trial court made numerous factual findings, and determined that the Hospital established that it was a "purely public charity" within the meaning of Article VIII, Section 2(a)(v) of the Pennsylvania Constitution. However, the trial court determined that the Hospital failed to meet the statutory tax exemption requirements for purposes of section 204(a)(3) of the Assessment Law for the tax years 1993 and 1994. After rehearing the issue, the trial court granted the Hospital tax-exempt status for all the tax years in question. The Commonwealth Court affirmed. This court granted appellants' Petition for Allowance of Appeal limited to the issue of whether the Hospital operates "entirely free from a private profit motive."[5]

3. The Hospital's annual net income ranged between $456,000 and $3,129,000 for the relevant years.

4. The Hospital and taxing authorities agreed to waive a hearing before the Northampton County Revenue Appeals Board and present this case to the trial court *de novo*.

5. Our scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by substantial evidence. *Westinghouse Elec. Corp. v. Bd. of Assessment*, 539 Pa. 453, 652 A.2d 1306, 1309 (1995).

Appellants argue that the Hospital cannot fund for-profit organizations. *Pinnacle Health Hospitals v. Dauphin County Bd. of Assessment Appeals,* 708 A.2d 1284 (Pa.Commw.1998) *appeal withdrawn,* Nos. 120–121 M.D. Appeal Docket 1998. In a related argument, appellants assert that the purchase of the physicians' practices is indicative of a private profit motive. Lastly, according to appellants, the source of the funds is not determinative of whether the activities are tax-exempt.

The Hospital responds that the focus should be on whether any returns it receives are reinvested in the Hospital and do not result in any private inurement. Moreover, the loans to the for-profit organizations do not indicate a private profit motive since such loans were made with the expectation of and actually resulted in increased efficiency and improved medical care for the Hospital.

 The instant matter involves the application of the fifth prong of the test (hereafter "HUP test") this court developed to determine whether an organization is a "purely public charity" for purposes of Article VIII, § 2(a)(V) of the Pennsylvania Constitution.[6] *Hosp. Utilization Project v. Commonwealth of Pennsylvania,* 507 Pa. 1, 487 A.2d 1306 (1985). The fifth prong provides that an entity must operate "entirely free from a private profit motive" in order to maintain its status as a charitable institution. *Id.* at 1317.

 This court has had the opportunity to examine the application and analysis of the fifth prong of the HUP test on previous occasions. Most notably, in *Saint Margaret Seneca Place v. Bd. of Property Assessment, Appeals and Review,*

---

**6.** In order to qualify as a purely public charity, the entity must possess the following characteristics:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

*Hosp. Utilization Project v. Com. of Pennsylvania,* 507 Pa. 1, 487 A.2d 1306, 1317 (1985).

*County of Allegheny*, 536 Pa. 478, 640 A.2d 380 (1994), we addressed the narrow issue of whether having surplus revenue automatically revokes an entity's charitable status. As this court made clear, surplus revenue is not synonymous with private profit. *Id.* at 385. In fact, the court in *St. Margaret* ·recognized that tax-exempt charitable institutions will have revenue, including surplus revenue, but stressed that it is how such revenue is used that will determine whether it evidences a private profit motive. In determining whether the utilization of the revenue was indicative of a private profit motive, this court found the statutory mandate regarding surplus revenue to be instructive. This statute provides, in pertinent part, that the following property will be exempt from local taxes:

> All hospitals ... Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose....

72 P.S. § 5020–204(a)(3). Thus, this court concluded that surplus revenue did not represent a private profit motive where it was "utilized not only to cover operating expenses, but to increase efficiency, facilities, grounds and buildings" and did not affect the eleemosynary nature of the institution. *Id.*

In another case involving an evaluation of the fifth prong of the HUP test, *City of Washington v. Bd. of Assessment Appeals of Washington County*, 550 Pa. 175, 704 A.2d 120 (1997), this court considered the following factors to be determinative: the purpose of the college—a means of providing education for youths; the trustees served without salary; no dividends or profits were distributed to any private individual; and any surplus would be reinvested in the college. *Washington*, 704 A.2d at 125–26. Based on these factors, this court determined that the college met the fifth prong of the HUP test and should remain exempt from real estate taxes.

8

Thus, arising from the dictates of *St. Margaret* and *Washington*, the focus of the court in determining whether the fifth prong of the HUP test is met should be:

1) Whether the utilization of the revenue is made with the expectation of a reasonable return or some non-monetary benefit;

2) Whether the utilization of the revenue ultimately supports or furthers the eleemosynary nature of the charitable entity; and

3) Whether the utilization of the revenue inures, directly or indirectly, to any private individual related to the charitable entity or related organization(s).[7]

In the instant case, the findings of fact by the trial court, as accepted by the Commonwealth Court, established that the Hospital has capitalized its sister and parent organizations with either the expectation of repayment[8] or in order to increase the efficiency of its own operations. *Wilson Area School Dist. v. Easton Hosp.*, 708 A.2d 835, 844 (Pa.Cmwlth. 1998). For example, in funding the family practices, the trial court found that the Hospital was attempting to serve low income and underserved populations, in the hopes that such service would reduce inappropriate emergency room utilization by that population. *Id.* at 844 n. 20. In addition, the provision of medical services by outpatient clinics and physician practices reduces or eliminates the necessity of more

7. Moreover, this interpretation of "entirely free from private profit motive" is also consistent with federal tax exemption law. Although we realize that federal tax exemption involves a completely separate inquiry and does not control the case at hand, we find that it is instructive in helping to determine when an organization is operating entirely free from a private profit motive. As the trial court astutely noted in the instant case, under federal law, "nonprofit corporations can own for-profit corporations without losing their federal nonprofit tax status as long as the profits of the for-profit corporations are used to further the nonprofit purposes of the parent organization." Trial court opinion, 1/26/96, pp. 22, 23.

8. The Hospital loaned $700,000 to Valley Health Services, Inc. and has received $20,000 in repayment; the trial court held that this money was loaned with the expectation of a reasonable rate of return.

expensive inpatient hospital care in the event these occupational health problems are not treated at an earlier stage. *Id.*

In addition, the Hospital's charter provides that it "was formed to relieve human suffering by ministering to the sick and injured without distinction of race, creed, color or condition," and maintains an open admission policy as part of its charitable purpose. *Id.* at 836 n. 2. Thus, the Hospital never declines to provide medically necessary treatment based upon inability to pay. Moreover, approximately 61% of the Hospital's patients do not pay their full cost of care. *Id.* at 837 n. 5. The Hospital's donations to the community far exceeded its net income. *Id.* at 837.

The trustees do not receive any compensation for their services. *Id.* at 838 n. 7. No trustees of any other organization related to the Hospital receive compensation for their services. *Id.* In addition, the Hospital's executives receive reasonable salaries, and do not receive any other bonuses or fringe benefits. *Id.*

Thus, based on the above findings, it is clear that the Hospital is operating free of a private profit motive. The surplus is being utilized to increase the efficiency of the hospital or with the expectation of a reasonable return in support or furtherance of its charitable purpose. Increasing the efficiency of the hospital furthers the charitable purpose of the Hospital to continue to provide care to low income and underserved populations. In addition to increased efficiency, capitalizing some of the sister organizations is an attempt to provide more effective health care to an underserved population, which is clearly in furtherance of the Hospital's charitable mission. Finally, none of the revenue inures to any private individuals associated with either the Hospital or any of its related organizations.

Appellant relies on *Pinnacle, supra,* for the proposition that any surplus revenue can only be reinvested **within** the organization itself, and therefore the Hospital cannot invest in any of the Valley Health for-profit organizations. Initially we note that *Pinnacle* is a lower court decision and not binding on this

court. In *Pinnacle,* the Commonwealth Court focused on the status of the entities that were receiving the surplus revenue. It determined that the fact that Pinnacle was investing in for-profit organizations indicated a private profit motive. In addition, the court also looked at the funding of the medical practices, the existence of covenants not to compete between the physicians and hospital, and feared that the "bottom line" approach by the hospital was inconsistent with the idea of charitable care. The court concluded that there was no evidence that the businesses that Pinnacle was investing in provided charitable services or served "any charitable purpose at all," and therefore, Pinnacle could not maintain its tax-exempt status. *Pinnacle,* 708 A.2d at 1294.

However, based upon our discussion set forth herein it is clear that we reject any analysis which focuses on the status of the organizations which receive the money. Rather, the analysis is properly directed at whether the money is being used in furtherance of the organization's charitable purpose. In the instant case, it is clear that the utilization of surplus revenue is clearly an attempt to increase the Hospital's own efficiency, thus the expenditures are in the furtherance of the institution's charitable purpose. Moreover, appellants argument, if taken to its logical conclusion becomes absurd, since it is beyond peradventure that most, if not all charitable organizations invest in some type of for-profit organizations, even if passively through the stock market.

The Hospital must be and continue to be an efficient and cost-effective entity in order to continue to be a viable health care provider in the community, and should not be penalized for attempting to maintain a positive bottom line.[9] This is not to suggest that a hospital should be tax-exempt solely because it has a generous admission program that fills an essential purpose in our communities. However, where the entity is investing the money with the expectation that it will receive some benefit in return, the investment supports or furthers

9. Due to various federal and state regulations, Easton Hospital must maintain a positive bottom line in order to maintain its rating in the not-for-profit bond market. Trial court opinion, 1/26/96, p. 10.

the eleemosynary nature of the entity, and no benefit inures to any private individuals in either the charitable organization or its related organizations, such an entity should maintain its status as a charitable organization. Accordingly, the Hospital's use of its surplus revenue satisfies the fifth prong of the HUP test, and the health care provider should retain its tax-exempt, charitable status.

Based upon the reasons stated herein, the Order of the Commonwealth Court is affirmed.

Justice NIGRO files a dissenting opinion.

NIGRO, Justice, dissenting.

I cannot agree with the Majority's conclusion that Easton Hospital operates "entirely free of a private profit motive", and should therefore retain its tax-exempt, charitable status. Accordingly, I respectfully dissent.

As I interpret them, this Court's prior decisions in *City of Washington v. Bd. of Assessment Appeals of Washington County*, 550 Pa. 175, 704 A.2d 120 (1997) and *St. Margaret Seneca Place v. Bd. of Property Assessment, Appeals and Review, County of Allegheny*, 536 Pa. 478, 640 A.2d 380 (1994) squarely support the proposition that charitable entities are entitled to reinvest their surplus within for their maintenance or expansion without losing their tax-exempt status. In addition, I agree with the majority that charitable entities may invest their surplus funds and gain a reasonable return that will be used to further their charitable missions. Easton Hospital, however, has not reinvested in its charitable enterprise or made investments producing a reasonable return to support its charitable mission. Rather, Easton Hospital transferred its surplus to other non-profit and for-profit entities, which the record does not establish are charitable. Of the $1,960,000 transferred to these entities from 1990 to 1995, only $20,000 has been repaid. Contrary to the majority, I agree with the analysis set forth by the Commonwealth Court in *Pinnacle Health Hospitals v. Dauphin County Bd. of Assessment Appeals*, 708 A.2d 1284 (Pa.Commw. 1998), *appeal withdrawn*, Nos. 120–121 M.D. Appeal Dkt.1998, and would

find that under the facts of this case, the use of the Hospital's surplus to fund its corporate affiliates is evidence that the Hospital is not operating entirely free of a private profit motive.[1] While Easton Hospital is free to expand its own facilities, which have a charitable mission, it should not be permitted to capitalize other entities without such a purpose and maintain its tax-free status.[2] Therefore, I respectfully dissent from the decision of the majority affirming the decision of the Commonwealth Court in the instant case.

**1.** Appellants argue that Easton Hospital does not operate entirely free of private profit motive because it has loaned and contributed more than $3,320,000 to its parent company and its other subsidiaries to fund for-profit and non-profit ventures which are not charitable in nature and which compete with private sector businesses. Appellants further argue that Easton Hospital's employment contracts with doctors whose practices it buys have non-compete clauses which evidence a private profit motive. Contrary to the majority, I believe that Appellants' arguments have merit and that Easton Hospital's ventures into the private sector clearly evidence that during the tax years in question, it did not operate entirely free of a private profit motive.

**2.** With this in mind, I would simply reiterate the position expressed in my dissenting opinions in *Unionville–Chadds Ford School Dist. v. Chester County Bd. of Assessment Appeals*, 552 Pa. 212, 714 A.2d 397 (1998) and *City of Washington v. Bd. of Assessment Appeals*, 550 Pa. 175, 704 A.2d 120 (Pa.1997), that the HUP test should be applied to reinforce the traditional characteristics of charities, rather than to expand their scope to the point that the term 'charity' becomes meaningless.