Rev. Don LYONS, f/b/o Acres of Diamonds Community Development Corporation, Appellant,

v.

CITY OF PHILADELPHIA BOARD OF REVISION OF TAXES, City of Philadelphia and School District of Philadelphia.

Commonwealth Court of Pennsylvania.

Argued June 2, 2003.

Decided July 15, 2003.

Alan M. Kaplan, Philadelphia, for appellant.

Anne E. Whitcombe, Philadelphia, for appellees.

Before McGINLEY, J., COHN, J., and MIRARCHI, JR., Senior Judge.

OPINION BY Judge COHN.

This is an appeal by Donald Lyons (Lyons) on behalf of Acres of Diamonds Community Development Corporation (Diamonds) from an order of the Court of Common Pleas of Philadelphia County that conducted a *de novo* review and upheld the decision of the City of Philadelphia Board of Revision of Taxes (Board) to revoke the 92% real estate tax exempt status of Diamonds' official headquarters at 328 West Pelham Road in the West Mount Airy section of the City of Philadelphia (City).

The trial court made the following pertinent factual findings. Lyons is the Reverend of Bible Deliverance Church (Bible Deliverance) and the President of Diamonds. He is also the title owner of the property located at 328 West Pelham Road. This subject property had originally been owned by United House of Prayer for all People of the Church on the Rock of the Apostolic Faith (United). Due to litigation, the details of which are not of record in this case, the property was purchased by Bible Deliverance on April 17, 1995, pursuant to a settlement agreement. That agreement provided for an installment purchase plan for the property. On that same day, Bible Deliverance immediately assigned its rights to Diamonds because it did not have the funds to consummate the agreement. Thereafter, in July 1998, United delivered to Diamonds a deed for the subject property for consideration of $125,000.[1]

The difficulties that gave rise to this lawsuit began in October of 1999, when Diamonds transferred title of the property to Lyons as a "straw party" for the use and benefit of Diamonds, pursuant to an agreement dated October 1, 1999 for consideration of $225,000. Critical for our purposes, the deed further stated, "this conveyance is subject to the resolution passed by the Board of Directors of Diamonds dated September 3, 1999 wherein it was resolved that the within property should be conveyed to Donald Lyons for the purpose of obtaining financing for rehabilitation and expansion of the property. The failure of Donald Lyons to comply with said resolution concerning improvements and expansion of the property shall cause the reversion of title."

The trial court, in reviewing this agreement, noted specifically that no time limit had been placed on the arrangement. The record makes clear that the purpose of the straw party agreement was to secure financing for rehabilitating the property because financial institutions had indicated that they would not make loans to Dia-

---

1. Prior to the delivery of the deed to Diamonds, the Board had made a decision regarding the tax liability of the subject property and, in March of 1998, it determined that it would be 92% tax exempt from real estate taxes "while it is owned and used for the purpose stated in the application for the tax year 1996 and thereafter." (As will be discussed later in the opinion, that purpose was to aid community redevelopment in North Philadelphia.) Thereafter, an appeal was filed with regard to the tax status, but a settlement was reached.

monds. The trial court also noted that the agreement indicated that Lyons would be paid a fee, equal to ten percent of the total mortgage amount, for his role in the transaction. The court specifically stated, "[i]t is important to note that Lyons signed the agreement for [Diamonds] and then Lyons signed again for himself. While it is purported that Lyons is merely the straw party who provided for the financing so that [Diamonds] could better utilize the property, it is apparent that Lyons is the title owner of the property in fee." (Trial Court Opinion at 3.)

The court also observed that Diamonds was formed to conduct community redevelopment in the neighborhood *surrounding its original location in North Philadelphia*, at 2309 North Broad Street, near Broad and Susquehanna Streets. Lyons asserted, nonetheless, that redevelopment activities, including distribution of food, clothing, and home building and repair supplies to needy families have been occurring in the North Philadelphia area. He further testified that Diamonds provides tutoring services to school children, as well as computer training, drug counseling and general life counseling. The subject property is also used by Lyons to conduct his weekly religious radio program. The court also found that a City employee made a scheduled and announced visit to the property to see if any charitable activities were occurring, and that this witness inspected twenty-three rooms and found no activity on the premises, or any indication that the property was being used for charitable purposes, *i.e.*, he saw no one receiving counseling or tutoring or distributing food or building supplies. (N.T. 89.) Finally, the court observed that there was evidence that Lyons lives in the carriage house on the subject property, despite testimony to the contrary at trial that he lived with his sister at 3817 Park Avenue. (N.T. 76.)

As phrased by the trial court, "for all intents and purposes as far as this court can determine Lyons is [Diamonds]." (Trial Court Opinion at 4.) Importantly, the court found that the agreement contained no termination date which would end the arrangement and, therefore, Lyons could conceivably maintain ownership of the subject property and dispose of it however he chose.

There is no question that, in order to be eligible for a real estate tax exemption, the owner of the property must be a charitable organization and Lyons is not. Indeed, at trial he made no such assertion; his theory was that the trial court should recognize that Diamonds is the real owner of the property. The trial court, after determining that such was not the case, and that, in any event, there was insufficient evidence that the activities occurring on the property would entitle it to a charitable exemption, affirmed the Board's order. An appeal to this Court followed.

■ Our scope of review in a tax assessment appeal is limited to determining whether the trial court abused its discretion or committed an error of law, and whether the trial court's findings are supported by substantial evidence. *Wilson Area School District v. Easton Hospital*, 708 A.2d 835, 838 n. 9 (Pa.Cmwlth.1998), *affirmed*, 561 Pa. 1, 747 A.2d 877 (2000).

■ A property owner's entitlement to tax exemption is a mixed question of fact and law. *Id.* Absent an abuse of discretion or a lack of supporting evidence, we will not disturb the trial court's decision as to whether an entity is a purely public charity and entitled to a tax exemption. *Id.* The trial court is the fact finder and, thus, credibility matters are solely within its province. *Borough of Homestead v. St. Mary Magdalen Church*, 798 A.2d 823, 825 n. 3 (Pa.Cmwlth.2002)

On appeal here, Diamonds asserts first that it is the equitable owner of the property, and that the trial court committed error in not determining that it had equitable title to the property. Diamonds also maintains that it has met its burden to show that it is a purely public charity, as that term has been defined by case law and statute, and, relatedly, that there was no contradictory testimony to support a contrary conclusion. It, thus, asserts that the court's decision was not supported by substantial evidence.

■ Regarding the equitable ownership issue, Diamonds relies on the statement in the deed indicating that the property was conveyed to Lyons only for purposes of obtaining financing. As the trial court noted, however, no time limitation was placed on the occurrence of that event. Diamonds asserts that the law states that, where there is no time for performance specified in a written instrument, the law implies that it shall be done within a reasonable time. It, thus, contends that the trial court erred in not inserting the missing time element. It cites numerous cases where courts have supplied such a missing term. This equitable remedy, "reformation," is used to correct fraud or mistake and the actual agreement usually needs to be established by clear and convincing evidence. *Black's Law Dictionary*, 1285 (7th ed.1999).

■ In reviewing the cases cited by Diamonds where reformation was used, we note that they fall into two categories: (1) contract actions and (2) equity matters; no cases have been cited where this remedy was utilized in a statutory appeal to support a real estate tax exemption. To the extent Diamonds relies upon equity cases, it is well-settled that courts sitting in equity have broad power to do justice. *See generally, Peitzman v. Seidman*, 285 Pa.Super. 228, 427 A.2d 196, 199, n. 4 (1981). The matter *sub judice*, however, is not an equity matter; Diamonds, as just noted, is seeking an exemption from the payment of real estate taxes. It is **Diamonds'** burden to convince the Board and trial court that such an exemption is warranted. *Appeal of Sewickley Valley YMCA*, 774 A.2d 1 (Pa.Cmwlth.2001). It is not up to the court to prove Diamonds' case by applying legal principles that are foreign to statutory appeals matters. Moreover, where, as here, the same signature appears on the contract for both parties, we think supplying terms is especially inappropriate. The Board was a stranger to the contract in every way. We, thus, conclude that this remedy is not available in a statutory appeals matter where a real estate tax exemption is sought.

■ Even if we found that Diamonds were the equitable owner of the property, the trial court additionally held that Diamonds did not meet the five-part test that an organization must meet in order to be deemed a purely public charity under Article VIII, Section 2(a)(v) of the Pennsylvania Constitution of 1968, which provision authorizes the General Assembly to exempt institutions of purely public charity from taxation.[2] As the Supreme Court has stated, an entity qualifies as a "purely public charity" if it:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

---

**2.** The General Assembly has done so in Section 204 of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–204.

(e) Operates entirely free from private profit motive.

*Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 22, 487 A.2d 1306, 1317 (1985) (*HUP*). The General Assembly has now enacted the Institutions of Purely Public Charity Act[3] (Charity Act) and the criteria in Section 375 of that Act, 10 P.S. § 375, track the *HUP* test. *Community Options, Inc. v. Board of Property Assessment, Appeals and Review,* 571 Pa. 672, 681, 813 A.2d 680, 685 (2002).

Diamonds argues that the trial court's determination that it did not meet the *HUP* test was not based on substantial evidence. However, the court found that Diamonds' only witness proffered, largely self-serving testimony that was not credible. The trial court is vested with the authority to make credibility determinations, *Borough of Homestead,* and we will not disturb them on appeal. Based on its credibility determinations, the court clearly found that Diamonds did not meet prongs (a) and (b) of the *HUP* test, which require it to operate free from a profit motive and render gratuitously a substantial portion of its services, respectively. Regarding prong (a), the court noted that Lyons received $225,000 for entering into the "straw party" agreement, that the agreement had no time limitation, and that Lyons lives on the property. These facts serve to indicate a "profit motive." Regarding prong (b), it noted, *inter alia,* that a disproportionate amount of revenue was used to pay the mortgage on the subject property; that, in the year 2000, under three percent of the $60,000 donated to Diamonds went to charitable purposes, whereas forty percent went to pay the mortgage, more than six percent to pay musician fees, and four percent to pay for fundraising activities. The court observed, also, that the figures were similar for the following tax year. As the court stated, "the list of fundraising activities for both years indicates that there was a great deal more of bus excursions and social events than helping the people of North Philadelphia." It also stated that the only evidence presented pertaining to charity work being done was through Lyons' own "self-serving testimony." The city employee, who made an *announced* and *scheduled* visit to the subject premises to determine whether there were activities occurring there that would merit the designation of tax-exempt status, found there was no such activity taking place.

Our own careful reading of the record reveals that, in addition to the three percent charitable donation noted by the trial court, which was used for tutoring purposes, the only other testimony of any specificity whatsoever regarding donations is a single statement that approximately $2,000 donated to Diamonds was annually used to purchase building and supply materials that were then donated to the needy, and a statement that about 400 pieces of clothing per month were distributed to the poor. Regarding the first point, it is clear that the trial court found Lyons' self-serving testimony to be lacking in credibility, a matter solely within its purview. *Borough of Homestead.* With regard to the second point, there is not one shred of evidence in the record as to the value of any clothing donated to the needy. While it is true that whether donations rendered are "substantial" must be based on the totality of the circumstances and that there is no "bright line test" based on any certain percentage, *Lehighton Area School District v. Carbon County Board of Assessment,* 708 A.2d 1297, 1303 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* 557 Pa. 642, 732 A.2d

---

**3.** Act of November 26, 1997, P.L. 508.

1211 (1998), the facts here simply do not support Diamonds' allegations that it rendered substantial charitable contributions. Thus, we concur with the trial court that Diamonds has not proven its case under the *HUP* test.

Diamonds also asserts that the court should have focused on the percentage that the free or charitable services provided bore to the total services provided, and NOT on the percentage that the cost of services bore to the total revenues.[4] (Appellant's Brief, p. 33.) To bolster this argument, it cites to the "safe harbor" provision in Section 5(d) of the Charity Act, 10 P.S. § 375(d), which pertinently states:

(1) The institution must donate or render gratuitously a substantial portion of its services. This criterion is satisfied if the institution benefits the community by actually providing any one of the following:

(i) Goods or services to all who seek them without regard to their ability to pay for what they receive if all of the following apply:

(A) The institution has a written policy to this effect.

(B) The institution has published this policy in a reasonable manner.

(C) The institution provides uncompensated goods or services at least equal to 75% of the institution's net operating income but not less than 3% of the institution's total operating expenses.

(ii) Goods or services for fees that are based upon the recipient's ability to pay for them if all of the following apply:

(A) The institution can demonstrate that it has implemented a written policy and a written schedule of fees based on individual or family income. An institution will meet the requirement of this clause if the institution consistently applies a formula to all individuals requesting consideration of reduced fees which is in part based on individual or family income.

(B) At least 20% of the individuals receiving goods or services from the institution pay no fee or a fee which is lower than the cost of the goods or services provided by the institution.

(C) At least 10% of the individuals receiving goods or services from the institution receive a reduction in fees of at least 10% of the cost of the goods or services provided to them.

(D) No individuals receiving goods or services from the institution pay a fee which is equal to or greater than the cost of the goods or services provided to them, or the goods or services provided to the individuals described in clause (B) are comparable in quality and quantity to the goods or services provided to those individuals who pay a fee which is equal to or greater than the cost of the goods or services provided to them.

(iii) Wholly gratuitous goods or services to at least 5% of those receiving

---

4. Diamonds is correct in noting that the method employed by the trial court does not work well in a situation where, as here, the entity receives many donations not in cash, but in kind, and where financial statements are kept on a "cash flow" basis and do not take into account items donated without charge. However, if Diamonds wishes to qualify for tax exempt status, it is incumbent upon it to keep records and provide testimony that will demonstrate that it meets the legal criteria entitling it to such status. Section 5(d)(4)(v) of the Charity Act, 10 P.S. § 375(d)(4)(v), recognizes the notion of the "reasonable value" of goods donated to a charitable organization for distribution, but even that computation requires evidence. *See, e.g., Grace Center Community Living Corp. v. County of Indiana,* 796 A.2d 1008 (Pa. Cmwlth.2002).

similar goods or services from the institution.

. . .

(v) Uncompensated goods or services which in the aggregate are equal to at least 5% of the institution's costs of providing goods or services.

Subsections (i)-(ii) clearly do not apply, since the criteria in the statute were not proven. For example, there is no evidence as to any written policy as required by those subsections. Similarly, subsections (iii) and (v) are not helpful since they require a percentage calculation and we do not have the relevant figures.[5] *Cf. Appeal of Sewickley.* Moreover, any general figures proffered were supplied by Lyons who, as noted earlier, was not found credible. Thus, we disagree with Diamonds that it has demonstrated that it falls within the "safe harbor" criteria. In short, we concur with the trial court's view that, while there is certainly evidence of record that Diamonds donates food, clothing, and building materials it receives, there is simply nothing to show that five percent or more of those donations go to the needy of North Philadelphia.[6]

Having determined that the trial court correctly upheld the Board's decision, we affirm.

### ORDER

**NOW,** July 15, 2003, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.

---

5. Diamonds' accountant did not appear at the hearing, and documents he was to provide were not available.

6. Diamonds also contends that it has been recognized as a charitable organization by other groups, such as the Philadelphia Food Bank. Such recognition, however, is not within the criteria for designation of a purely public charity for tax exemption purposes and is, therefore, not determinative of the issue here.