## AMERICAN ASSOCIATION FOR LOST CHILDREN, INC., Appellant

### v.

## WESTMORELAND COUNTY BOARD OF ASSESSMENT APPEALS.

Commonwealth Court of Pennsylvania.

Argued May 5, 2009.

Decided July 2, 2009.

Eric E. Bononi, Greensburg, for appellant.

Darrell J. Arbore, North Huntingdon, for appellee.

BEFORE: LEADBETTER, President Judge, and COHN JUBELIRER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

American Association for Lost Children, Inc. (Association) appeals from the September 25, 2008, order of the Court of Common Pleas of Westmoreland County (trial court), which denied the Association's appeal from the determination of the Westmoreland County Board of Assessment Appeals (Board) that the Association is not entitled to an exemption from Pennsylvania real estate taxes. We affirm.

In 1987, Mark R. Miller (Miller) founded the Association, a non-profit entity that searches for and recovers missing children. The Association focuses its efforts on criminal abductions associated with child custody disputes, working both in the United States and internationally to reunite abducted children with their custodial parent. The majority of the Association's work is outside Pennsylvania. The Association does not charge for its services but relies on donations from the public. (Trial ct.'s Findings of Fact, Nos. 1–2, 4–6; R.R. at 51a–52a.)

On February 13, 2008, the Association appealed from the Board's determination that it is not entitled to an exemption from real estate taxes for its headquarters in Latrobe, Pennsylvania (Property). The Association contends that because the Association is a purely public charity, and the Property is utilized solely for charitable purposes, the Property is exempt from

real estate taxes pursuant to section 204(a)(3) of the General County Assessment Law (Assessment Law).[1] The trial court held a *de novo* hearing on the matter.

At the hearing, Miller testified regarding the Association's mission, operations and funding. Miller explained that, when contacted regarding abducted children, the Association performs a "hands-on" investigation, doing whatever is required to track the abductor and children so that law enforcement officials can recover the children. Miller noted that because no United States law enforcement agency has jurisdiction to recover missing children from foreign countries, the Association acts as an "agent" to rescue children taken to foreign countries. Miller explained that, in light of these services, the Association meets the test set forth in *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985) (*HUP*)[2] as a purely public charity because: (1) the Association relieves the government of its burden to find missing children and their abductors, particularly outside the United States; (2) without the Association's services, the government would have to expend money to investigate these matters and recover the abducted children; (3) the Association does not charge parents or the law enforcement officials any fees for its services; and (4) the Association helps parents to reunite with their children. (R.R. at 50a–57a, 63a, 66a–67a.)

---

1. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–204(a)(3). This section provides, in relevant part, that real property owned by associations and institutions of charity founded, endowed and maintained by public or private charity are exempt from all county, city, borough, town, township, road, poor and school taxes. *Id.*

2. Under *HUP*, a "purely public charity" must possess *all* of the following characteristics:
   (a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;
(c) Benefits a substantial and indefinite class of person who are legitimate subjects of charity;
(d) *Relieves the government of some of its burden;* and
(e) Operates entirely free from private profit motive.
*HUP*, 507 Pa. at 22, 487 A.2d at 1317. (Emphasis added.)

On cross-examination, Miller agreed that: he had no specific evidence that the Association relieved the financial burden of any particular law enforcement agency; he is not a licensed private detective; the Association does not employ any licensed private detectives; and he has never worked in law enforcement or as a government investigator. (Trial ct.'s Findings of Fact, No. 4; R.R. at 59a–60a.)

In support of its claim, the Association also submitted various newspaper and magazine articles, as well as an August 21, 2008, letter from the Westmoreland County District Attorney, John W. Peck, and an affidavit by Westmoreland County Sheriff, Chris Scherer. Both the letter and the affidavit stated that the Association relieves the government of some of its burden;[3] however, both documents also indicated that the author had no first hand knowledge of the Association. (R.R. 78a, 98a.)

In rendering its decision, the trial court focused on what it viewed as the relevant prong of the test set forth by our supreme court in *HUP*: whether the Association relieves the government of some of its burden. The trial court observed that, not only is the government's burden with regard to finding missing or abducted missing children not *precisely* defined, the law

does not favor the delegation of governmental police duties to private entities. *Commonwealth v. Emmers*, 221 Pa. 298, 70 A. 762 (1908) (stating that it is manifestly improper for the government to delegate police functions to an individual or private corporation).

Moreover, while finding Miller's testimony generally credible, the trial court was not persuaded by his testimony that the Association relieved the government of some of its burden. In this regard, the trial court found that the Association's documentary evidence had no evidentiary weight, and that the Association failed to introduce any evidence showing that it relieves any financial burden on law enforcement agencies or that the Association's members, officers and employees are qualified to investigate cases of missing or abducted children.

Finally, the trial court concluded that the Association did not have the capacity to relieve the government of some of its burden. The trial court explained that it was unclear whether the Association had any legal authority to investigate the whereabouts of missing children in the United States or in foreign countries where the Association does not employ a licensed private investigator and that it could not ratify *ultra vires* activity.[4] For

---

3. Peck's letter stated, "the work of the Association relieves the government of some of its burden by providing a service to the public that the government would otherwise be obliged to fund or to provide directly or indirectly." (R.R. at 78a.) Scherer's affidavit stated that the Association: works in collaboration with law enforcement agencies to rescue missing and abducted children; supplements the work of law enforcement agencies to make arrests of felons in child abduction cases; and "[i]n certain situations[,] relieves Law Enforcement Agencies of public burden and duty." (R.R. at 99a.)

4. The performance of detective services, such as the investigation of the whereabouts of

missing persons, is governed by The Private Detective Act of 1953 (Detective Act), Act of August 21, 1953, P.L. 1273, *as amended*, 22 P.S. §§ 11–30, which requires that individuals performing such activities be licensed. Although section 15 of the Detective Act states that the act does not apply to duly incorporated charitable or philanthropic societies or associations which are organized and maintained for the public good and not for private profit, section 15 prohibits these exempt associations from performing, in any manner, detective services as described in section 2 of the Detective Act, 22 P.S. § 12, which include the investigation of the whereabouts of missing persons, for *any other person* or associa-

all of these reasons, the trial court held that the Association was not entitled to a real estate tax exemption.

On appeal,[5] the Association challenges the trial court's conclusion that the government has no clear duty to find any specific missing or abducted child. Citing the Missing Children's Assistance Act (MCAA), 42 U.S.C. §§ 5771–5778, and the National Child Search Assistance Act of 1990 (Child Search Act), 42 U.S.C. §§ 5779–5780a,[6] the Association maintains that the government has a burden to provide law enforcement officers to find missing or abducted children and that its activities relieve some of that burden. However, the trial court did *not* conclude that the government had no burden to find missing and abducted children; instead, the trial court questioned whether this burden could be, or should be, relieved by private citizens. (Trial ct. op. at 5.) Moreover, to the extent that the federal laws cited by the Association establish that the government has a burden to investigate the whereabouts of missing and abducted children, those laws are not evidence that the Association relieves some of that governmental burden.

To satisfy that burden, the Association relied upon Miller's testimony and documentary evidence. However, the trial court, acting in its role as fact finder, was not persuaded by Miller's testimony and gave no evidentiary weight to the documentary evidence. In tax assessment cases, the trial court is the fact finder; matters of credibility and evidentiary weight are solely within the trial court's province, and we are bound by those determinations on appeal. *Lyons v. City of Philadelphia Board of Revision of Taxes*, 828 A.2d 485 (Pa.Cmwlth.2003). Additionally, we note that the Association did not challenge the trial court's determination that the Association does not have the *capacity* to relieve the government of some of its law enforcement burden. Having failed to raise this issue on appeal, the Association has waived any challenge to this determination. Pa. R.A.P. 2116(a); Pa. R.A.P. 2119(a).

Because the Authority did not establish that it relieved the government of some of its burden to investigate the whereabouts of missing children, the trial court properly concluded that the Association is not

---

tion whether for fee or as an accommodation without fee or remuneration. 22 P.S. § 25.

5. In a tax assessment appeal, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law or whether its decision is supported by substantial evidence. *Lyons v. City of Philadelphia Board of Revision of Taxes*, 828 A.2d 485 (Pa.Cmwlth.2003). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985). A property owner's entitlement to a tax exemption is a mixed question of fact and law, and absent an abuse of discretion or a lack of supporting evidence, this court will not disturb the trial court's decision. *Lyons.*

6. The purpose of the MCAA is to address the problems associated with the abduction of children by non-custodial parents and the resulting need to search for and return of those children, and it provides grant money to, *inter alia*, the National Center for Missing and Exploited Children, which, in turn, provides reporting resources, educational resources, and coordinates public and private programs that locate, recover, or reunite missing children with their families. 42 U.S.C. § 5773(b). The Child Search Act requires, *inter alia*, that federal, state and local law enforcement report each case of missing children under the age of 21 reported to the agency to the National Crime Information Center of the Department of Justice and must institute or assist with appropriate search and investigative procedures to find such child. 42 U.S.C. §§ 5779–5780.

entitled to a real estate tax exemption as a purely public charity. *HUP.*

Accordingly, we affirm.

## *O R D E R*

AND NOW, this 2nd day of July, 2009, the order of the Court of Common Pleas of Westmoreland County, dated September 25, 2008, is hereby affirmed.

## DISSENTING OPINION BY Judge COHN JUBELIRER.

I must respectfully dissent because I believe there is a sufficient basis to conclude that the American Association for Lost Children, Inc. (Association) "relieve[s] the government of some of its burden." 10 P.S. § 375(f).

In support of the Association's position that it qualified for the real estate tax exemption as a public charity, the Association offered into evidence the testimony of its Director, Mark R. Miller, as well as various letters from law enforcement officials and news clippings detailing the Association's successful efforts. The trial court found the testimony of Miller to be "generally credible" as to the work of the Association in "search[ing] for and recover[ing] missing children" (Trial Ct. Op. Findings of Fact (FOF) ¶¶ 1, 7), but also found that much of this work was either "international or involve[d] States other than Pennsylvania." (FOF ¶ 6.)

In this case, the trial court focused its examination on: (1) whether the government has a duty to do what the Association does; and (2) by what specific amounts the Association's efforts reduce the government's financial burden.

The trial court also stated that "[n]either the memorandum submitted by appellant, nor the Court's research, have produced any law that precisely defines the scope of the government's burden to find a missing or abducted child" (Trial Ct. Op. at 5), and that it was "not persuaded by Miller's testimony regarding the government's burden to find lost children or the Association's relief of that burden." (FOF ¶ 7.) The trial court based this finding on the "little weight" it gave to the Association's documentary evidence "due to [the] low quality" of that evidence. (FOF ¶ 8.)

In discussing the trial court opinion, the majority notes that "the trial court did *not* conclude that the government had no burden to find missing and abducted children," *American Association for Lost Children, Inc. v. Westmoreland County Board of Assessment Appeals,* 977 A.2d at 598 (Pa.Cmwlth., No. 1928 C.D. 2008, filed July 2, 2009)(emphasis added), but that "the government's burden with regard to finding missing or abducted missing children [is] not *precisely* defined." *American Association,* majority op. at 597 (emphasis added). The majority also explains "that the Association failed to introduce any evidence showing that it relieves any financial burden on law enforcement agencies." *American Association,* majority op. at 597.[1] Thus, the majority and trial court treat the issue of duty by the government as an evidentiary one, and conclude that Miller simply did not meet his burden. I believe the majority and trial court, in focusing on the factual aspect of the "relieve[s] the government of some of its burden" component of the "purely public charity" analysis, do not fully consider the legal aspect of that determination.

---

1. Although the parties reference memoranda that were being submitted to the trial court at the start of the trial court's hearing, the certified original record from the trial court does not contain any memoranda from the parties, and the trial court docket contains no indication of such briefs having been filed.

The real estate tax exemption for public charities has its foundation in the Pennsylvania Constitution, in particular, article VIII, § 2, which permits the General Assembly to exempt from taxation: "[i]nstitutions of purely public charity." Based on this language, the General Assembly enacted the Institutions of Purely Public Charity Act (Act), Act of November 26, 1997, P.L. 508, 10 P.S. §§ 371—385. Section 5 of the Act provides five criteria that an institution must satisfy to be a public charity. The criteria are drawn from the Pennsylvania Supreme Court's articulation of the five requirements an entity must meet to qualify as a purely public charity:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

*Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 21–22, 487 A.2d 1306, 1317 (1985); *see also* 10 P.S. § 375. Examination of these criteria is a "mixed question of law and fact." *G.D.L. Plaza Corp. v. Council Rock School District,* 515 Pa. 54, 59, 526 A.2d 1173, 1175 (1987). Although the Act provides detailed factors to consider when analyzing each of the five criterion, 10 P.S. § 375, the focus of the present case is the fourth criterion, that the entity "relieve[s] the government of some of its burden," and the accompanying factors.[2] Of particular relevance for this case, is the factor in Section 5(f)(2) which provides that the criterion is met if the institution "[p]rovides services in furtherance of its charitable purpose which are either the responsibility of the government by law or which historically have been assumed or offered or funded by the government." 10 P.S. § 375(f)(2). Examination of this factor involves both issues of law and of fact.

We must first determine whether a particular type of service is a "responsibility of the government by law"—i.e., whether it is a governmental duty. Examination of this issue is a question of law. Factual evidence is not necessary to determine if the government has a particular duty. Further, any perceived lack of evidence produced in this case as to a particular government duty does not render the obli-

2. Section 5 of the Act sets forth the factors for evaluating the government service criterion.
   **(f) Government service.**—The institution must relieve the government of some of its burden. This criterion is satisfied if the institution meets any one of the following:
   (1) Provides a service to the public that the government would otherwise be obliged to fund or to provide directly or indirectly or to assure that a similar institution exists to provide the service.
   (2) Provides services in furtherance of its charitable purpose which are either the responsibility of the government by law or which historically have been assumed or offered or funded by the government.
   (3) Receives on a regular basis payments for services rendered under a government program if the payments are less than the full costs incurred by the institution, as determined by generally accepted accounting principles.
   (4) Provides a service to the public which directly or indirectly reduces dependence on government programs or relieves or lessens the burden borne by government for the advancement of social, moral, educational or physical objectives.
   (5) Advances or promotes religion and is owned and operated by a corporation or other entity as a religious ministry and otherwise satisfies the criteria set forth in section 5.
   (6) Has a voluntary agreement under section 7 [10 P.S. § 377].

gation imprecise or beyond the court's ability to recognize.

The government has an inherent duty to enforce the law. Concomitant with that duty is a duty to investigate criminal wrongdoing. In this case there is no dispute that the abduction of children is illegal. It follows that the investigation of child abductions is a duty of the government. This duty is made more apparent through legislation such as the Missing Children's Assistance Act, which among other things, noted the existence of a "national resource center and clearinghouse," the National Center for Missing and Exploited Children (Center), which "works in partnership" with governmental agencies *"in the effort to find missing children and prevent child victimization."* 42 U.S.C. § 5771(9)(A)-(B) (emphasis added).[3] Similarly, law enforcement agencies at all levels are required to report cases of missing children to the National Crime Information Center, and are also required to "institute or assist with appropriate search and investigation procedures; and maintain close liaison with the National Center for Missing and Exploited Children for the exchange of information and technical as-

sistance in the missing children cases." 42 U.S.C. § 5780(4)(B)-(C).[4] Thus, I would find that the government's duty to investigate the abduction of children is sufficiently established by the inherent duty of the government to investigate criminal activity, as well as by the explicit commands of statutory authority, such as the Missing Children's Assistance Act.

We must next determine whether the particular institution that is seeking a charitable exemption "provides services in furtherance of its charitable purpose." This is a question of fact and, in this case, I would conclude that the testimony presented by Miller, found "generally credible" by the trial court, met this burden and established that the Association investigated the abduction of children.

The majority and trial court engraft an additional component to the factual analysis that is not required by Section 5(f)(2); in particular, what tangible financial impact the Association's efforts have on the government. Section 5(f)(2) contains no references to finances, but looks only at whether the government has a legal duty to do a particular service, and whether the institution also performs that service.[5]

3. In particular, this Center:
   (B) works in partnership with the Department of Justice, the Federal Bureau of Investigation, the United States Marshals Service, the Department of the Treasury, the Department of State, the Bureau of Immigration and Customs Enforcement, the United States Secret Service, the United States Postal Inspection Service, and many other agencies in the effort to find missing children and prevent child victimization. 42 U.S.C. § 5771(9)(B).

4. This particular section was enacted in the Crime Control Act of 1990, P.L., 101–647, XXXVII, § 3702.

5. The majority's approach would essentially allow government to forgo duties it otherwise has by simply not allocating funds toward meeting that duty. That the ability to carry

out the search for abducted children may be hampered by budgetary constraints does not eviscerate the duty to search for abducted children. *See generally*, 42 U.S.C. § 5771(3) (legislative finding by the United States Congress in the Missing Children's Assistance Act that, "in many cases, parents and local law enforcement officials have neither the resources nor the expertise to mount expanded search efforts"). It is unclear to me what type of evidence the majority would deem sufficient to establish that an institution has *financially* relieved the government of a burden. I would suggest that requiring a reviewing body to look at the exact amounts of money that a taxpayer's efforts saved the government is an approach that few, if any, taxpayers will, or can, ever succeed at, particularly if the government's own spending on that duty is negligible to non-existent.

In this case, the government's duty is to investigate the abduction of children, which is an inherent duty as well as one established by statute. Here, because the Association investigates the abduction of children, I would conclude that the legal and factual requirements of Section 5(f)(2) are satisfied. As the remaining criteria are not at issue, I would reverse the trial court and find that the Association is eligible for the real estate tax exemption.[6]

For these reasons, I respectfully dissent from the majority.

---

**6.** The trial court and the majority reference The Private Detective Act of 1953 (Detective Act), Act of August 21, 1953, P.L. 1273, *as amended*, 22 P.S. §§ 11–30 and, in no small measure, rely on this act in concluding that the Association does not relieve the government of a burden. I note that neither the Westmoreland Township County Board of Assessment Appeals, nor the Township of Unity (where the property is located) raise the Detective Act in their briefs before this Court. I also note that it was the trial court itself that, at the end of the hearing, after all parties had testified, astutely asked Miller whether he was a private detective or whether the Association employed private detectives. (Trial Ct. Hr'g Tr. at 30.) Because the Detective Act was not raised by the parties, but was sua sponte raised by the trial court, I would conclude that we cannot rely on it in this particular appeal.